NEIL McCAFFREY, Respondent, v. TAMM BROTHERS GLUE CO., Appellant.

St. Louis Court of Appeals, November 2, 1909.

1. MASTER AND SERVANT: Custom: Sanction of Master Inferred. Where there is testimony that a particular appliance was used in a certain way for eight years with the knowledge of the master's foreman and superintendent, the jury might infer the master had sanctioned that usage.

2. ————: ————: ————: Novel Use of Appliance: Master Bound to Use Ordinary Care. A master who sanctions the continuous use of an appliance by his employees for a purpose different from the one for which it was designed, is bound to exercise care to have the appliance reasonably safe for the employee's use in this novel purpose.

3. ————: Negligence: Injury to Servant: Defective Appliances: Master's Knowledge of Defect not Shown: Case Stated. A servant, while pulling taut a chain used to keep a load on a wagon in place, was injured by reason of the chain parting, thus permitting the load to fall on him. The chain parted because it had broken before and had been tied together either with strings or wire. One witness testified it was tied with strings just before the wagon was loaded. Another testified it was tied with wires when he got the wagon from the yard, but he did not know by whom or when it was tied. The petition counted on negligence in furnishing a defective chain. It was not proved that some responsible officer or employee knew of the condition of the chain, or would have known it by reasonable care, nor that a regular or systematic system of inspection obtained in defendant's establishment, nor that the business was of such magnitude or the machinery so dangerous as to call for such inspections. *Held,* there was no showing defendant had actual or constructive knowledge that the chain was out of repair, and hence there was no showing it had violated its duty to use ordinary care to keep the chain in reasonably good order.

McCaffrey v. Glue Company.

4. ————: ————: ————: ————: **Master's Knowledge: Proof Necessary to Make Case.**   Defendant would have been answerable to plaintiff on proof that the chain was in bad repair or had been so long enough for defendant to have known the fact by due care, and that defendant ought to have anticipated mischief from its condition.   In those contingencies, defendant's neglect would have been the proximate cause of the accident.

5. ————: **Fellow Servants: Who Are.**   Two servants who were engaged by the same master in the prosecution of the same enterprise and common duty, whose ordinary tasks had reference to the same ends, and who, at the particular time, were at work getting out a load of hair, were fellow-servants.

6. ————: ————: **Master not Liable for Negligence of Fellow Servant.**   In an action for personal injuries sustained by a servant through the negligence of a fellow-servant, the master is not liable.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED.

*Morrow & Kelley* for appellant.

The demurrer to the evidence should have been sustained.   Plaintiff used chain for unauthorized and improper purpose.   The end-gate chain was not furnished or designed to boom to.   Defendant furnished safe and secure rings and bars for this purpose.   Plaintiff's injury was due to the fact that he improperly used the end-gate chain to boom to, a purpose for which it was neither furnished nor designed.   The master is not liable for the injuries to a servant caused by the unauthorized or improper use of appliances for purposes for which the appliances were neither furnished nor designed.   Moran v. Brown, 27 Mo. App. 487; York v. Railroad, 117 Mo. 405; Kelley v. Lawrence et al., 195 Mo. 75; 2 Thompson on Negligence (1904 Ed.), p. 231, sec. 4000; 20 Am. and Eng. Enc. of Law (2 Ed.), p. 141.   Negligence of fellow-servant cause of plaintiff's injury.   The chain was broken when the wagon got to

the hair house and was mended by a fellow-servant with a string just before the injury. Defendant had no notice that the chain had been mended. The negligence, if any, in selecting the material with which to mend the chain and in mending it, was the negligence of a fellow-servant and not the negligence of the master. A servant cannot recover damages from his master for injuries caused by the negligence of a fellow-servant. Moran v. Brown, 27 Mo. App. 487; Adams v. Machine Co., 95 Mo. App. 111; Herbert v. Ferry Co., 107 Mo. App. 287; Forbes v. Dunnavant, 198 Mo. 193. There is not a scintilla of evidence in the record showing any actionable negligence on the part of defendant. If there was any negligence at all in mending the end-gate chain it was the negligence of plaintiff's fellow-servant, Archie Stepto, and not defendant's negligence. The evidence is uncontradicted that defendant did not know the chain was broken or that Stepto had mended it. Nor is there any evidence in the record that even tends to prove that defendant could have known by the exercise of ordinary care that the chain was broken and that Stepto had mended it. The evidence fails to show even a casual connection between the injury and any negligence on the part of defendant, but the undisputed evidence does show beyond a reasonable doubt that any injury plaintiff sustained was the direct result of plaintiff's contributory negligence and the negligence of his fellow-servant, Archie Stepto.

*Cornelius F. Bauer* and *Henry A. Ashoff* for respondent.

(1) The rejection of all of plaintiff's instructions is not error, if the court of its own motion, fully and fairly instructs the jury on the whole case. Casey v. Gill, 154 Mo. 181. (2) In a civil action it is not the duty of the court to give instructions unless requested

so to do; and this applies to instructions as to the elements or measure of damages. Wheeler v. Bowles, 163 Mo. 398; Minter v. Bradstreet Co., 174 Mo. 444. (3) Where the instructions given as a whole, fairly and fully present the case to the jury, it is immaterial whether the court refused other correct declarations of law. Dixon v. Atkinson, 86 Mo. App. 24; State v. Nelson, 166 Mo. 191; Wolfe v. Supreme Lodge, 160 Mo. 675; Klockenbrink v. Railroad, 81 Mo. App. 351. (4) The court did properly instruct the jury on negligence defining reasonable care to be such care as a reasonable and prudent person would have exercised under similar circumstances. This is approved. Swanson v. Sedalia, 89 Mo. App. 121; Anderson v. Railroad, 161 Mo. 411. (5) A failure to examine appliances furnished by an employer as to any possible defects, does not constitute contributory negligence. Nixon v. Railroad, 141 Mo. 145. (6) Where defendant is dissatisfied with an instruction as to the measure of damages, he should ask for a more definite instruction, and unless he does so, he cannot take advantage in the appellate court of the objection. Dunn v. Railroad, 81 Mo. App. 42; State ex rel. v. Fidelity & Deposit Co., 94 Mo. App. 184; O'Neill v. Blase, 94 Mo. App. 648; Geismann v. Elec-Co., 173 Mo. 654; Sharp v. Biscuit Co., 179 Mo. 553. (7) Thus, if the instruction authorizes the jury to award compensation for injuries "if a permanent character," it is plainly correct, and does not constitute error. O'Neill v. Blase, supra.

GOODE, J.—This plaintiff was hurt while workng for defendant in its factory and recovered judgment in the present action upon the verdict of a jury; whereupon, after proper motions, an appeal was taken. Among the tasks of the factory was sacking hair and loading it on wagons for shipment. Plaintiff had worked in the establishment for eight years at the time of the

accident, his job being to assort hair, see it was ready for the market and sack and load it on wagons when a load was called for. As many sacks would be piled on a wagon as could be, and after the load was finished, a rope would be drawn over the top of the sacks and tied to the front and rear of the wagon, so as to hold the sacks in place and prevent them from dropping in consequence of the motion of the wagon. Plaintiff testified he had nothing to do with the wagons and team or anything except hair; but there was testimony going to show he was in the habit of notifying defendant's superintendent or manager when anything was out of repair about a wagon or harness, and was expected to do so. As far as the case is developed in the present record, the employees of defendant who figure in it do not appear to have had different lines of duty so rigidly marked off that nothing was expected of them outside prescribed and definite tasks, though each one worked, in the main, at such a task, lending a hand occasionally at a different kind of work. Archie Stepto is a negro who worked in the factory, usually in the warehouse, but occasionally he was sent out with a team. He says whenever the work was rushing he would take out a team and wagon; any team which happened to be standing in the stable. He had worked for the company eight years and during that time had driven a team off and on. John Crist was another employee who worked "in the hair" he said, and was an assistant to McCaffrey, the plaintiff. Richard Minkie testified he was a salesman, a sort of yard man, not a superintendent and never had been; that he did not have any particular charge of the teams in the yards or the wagons. But there was testimony he was superintendent, general yard foreman, and had charge of the wagons, teams and teamsters. One morning he ordered Stepto to take a wagon and team, "go down, get a load of hair" and take it to Glencoe's, wherever that may be. Stepto hitched a team to a glue stock wagon;

Minkie weighed it and Stepto drove into the yard of the factory and asked plaintiff for a load of hair. The testimony for plaintiff goes to show he was expected to be expeditious and even hasty in loading the wagon. Stepto was in the wagon bed to receive the sacks as Crist and plaintiff threw them to him. After the pile had been completed, the men attempted to tie the sacks on the wagon, and in doing so the accident occurred in which plaintiff was hurt. The process of tying was styled "booming," and consisted, as said, in drawing a rope, fastened to some part of the front of the wagon, over the top of the sacks down to the rear part of the wagon and tying it there, either to the axle, or to two bars which projected on either side of the wagon bed and to which a chain, which held up the hind-gate, was attached at the ends, or to rings fastened in the ends of these bars, or to said chain itself. This chain stretched across the back of the hind-gate, and was fastened at each end in rings which hung on the bars which projected from the side of the wagon. The primary use of the chain was to hold up the hind-gate, and one point made against the judgment is that it never was intended to be used for such a purpose as McCaffrey used it for when he tied the rope to it, and therefore he assumed the risk of injury or was negligent when he used it for that purpose. In connection with this contention it is insisted the proper way to tie or "boom" the load, was to fasten the rope to the rear axle or to the rings in the bars at either end of the wagon bed. It may be said right here, there was no part of the wagon which had been designed for the express purpose of having a rope fastened to it to hold loads on; there was no appliance of that kind, though there were several parts of the wagon to which a rope might be tied to keep a load in place, and, in fact, was tied. There was testimony the rope had been fastened to the hind-gate chain for eight years, with the knowledge of defend-

ant's foreman and superintendent, and from this testimony the jury might infer defendant had sanctioned that usage. We hold further that if defendant had tolerated this method of holding the load in place, it was bound to use ordinary care to see the chain was strong enough for the purpose and was kept in good repair. A master who sanctions the continuous use of an appliance by his employees for a purpose different from the one it was designed for, is bound to exercise care to have the appliance reasonably safe for the employee's use in this novel purpose. [1 Labatt, Master & Servant, sec. 28; Young v. Railroad, 69 N. H. 356; Dunn v. Railroad, 107 Fed. 666.] To continue the narrative of the facts: When plaintiff, after running the rope through the hind-gate chain, pulled on it to draw it taut, the chain parted and the load fell on and injured him. He testified he alone was pulling at the time and Stepto and Crist were on the load; but Stepto testified all three were on the ground and pulling with plaintiff. The chain parted because it had broken before and had been tied either with strings or wires. The witnesses disagreed about when and how it had been repaired. Crist testified that after the wagon was driven into the yard, Stepto took some strings and tied the parts of the chain together; but Stepto testified the chain was not tied with strings but with wires, was tied thus when he got the wagon from the shed and he did not know who tied it, or when; that he told plaintiff about its being tied with wires and warned him while he was pulling on the rope the wires would break; but this testimony was disputed. The weight of the evidence goes to show Stepto tied the chain with strings just before the wagon was loaded.

The negligence counted on in the petition was permitting a wagon to be loaded "which was not equipped with the customary strong and substantial chain appliance; but instead . . . a wagon

which had a defective and broken chain, having a portion of insecure rope substituted for the portion of broken chain." If defendant was to blame for the accident, it was in consequence of furnishing for plaintiff's use a chain tied with strings or wires so weak they would not hold against the tension of the rope; for if the chain had been left with the two ends dangling, instead of being tied together, plaintiff would not have drawn the rope against it and would have escaped injury. It will be noticed the main averment of the petition imports that defendant customarily furnished wagons with chains which were strong enough to tie to; hence negligence in providing appliances unsafe for plaintiff's use from the first, is excluded, and the only negligence counted on is providing one in the particular instance that had become unsafe; in other words, was out of repair. But that any employee of defendant knew this, was not alleged; and that any but Stepto knew it, was not proved. Neither was it proved some responsible employee or officer of defendant—foreman, superintendent or manager—would have known the fact by reasonable care. There is no proof of a regular and systematic inspection of vehicles in defendant's establishment before they were sent out for use, and which would have detected the weakness of the chain, if carefully made. Neither was there proof the business was of such magnitude, or the machinery used so dangerous, as to call for inspections of that kind. For aught shown the condition of hind-gate chains on the wagons was so open and obvious, and the number of wagons in use so few, that employees who tied to the chains might have been left to judge whether they were in safe repair, without requiring special inspections. [1 Labatt, Master & Servant, sec. 154; Wachsmith v. Co., 118 Mich. 275.] Defendant was bound to use ordinary care to keep the chains in reasonably good order, and we find nothing in proof indicating this duty was violated in the particular instance—none to show defendant knew

the chain was out of repair or in reason ought to have known it was, and hence was affected with constructive notice. [Covey v. Railroad, 86 Mo. 635; Flynn v. Bridge Co., 42 Mo. App. 529.] Defendant would have been answerable to plaintiff on proof that the chain was in bad repair or had been long enough for defendant to have known the fact by due care, and if defendant ought to have anticipated mischief from its condition. In those contingencies defendant's neglect would have been the proximate cause of the accident. But the evidence fell short of proving such matters.

If the testimony of Crist was true, and in a measure it was corroborated by other witnesses, and Stepto tied the chain with strings when he drove into the yard, or if Stepto alone knew the chain was unsafe and insecurely tied and failed to secure it or report the defect, then defendant is not liable; for the reason that the injury was caused by Stepto's negligence and he and plaintiff were fellow-servants. In our opinion there is no doubt they were fellow-servants, as they were engaged by the same master in the prosecution of the same enterprise and common duty; they were both at work at the time getting out a load of hair and their ordinary tasks had reference to the same ends.

No instructions were given for plaintiff submitting to the jury a theory of recovery, and after much reflection upon the case, we think there is no valid ground on which he can recover.

The judgment is reversed. All concur.