F. M. LOWE, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Respondent.

Springfield Court of Appeals, June 3, 1912. Motion for Rehearing Overruled, July 9, 1912.

1. MASTER AND SERVANT: Negligence: Injury to Servant While Using Dull Pick. While plaintiff was engaged in taking old ties out from under the rails on defendant's track, by imbedding one end of the pick in the tie and pulling on the handle of the pick, the pick slipped out on account of being dull and plaintiff fell backward and was injured. It appeared in evidence that before the accident plaintiff had complained to defendant's foreman that the pick was dull and the foreman had promised to have it sharpened the next morning, but there was no evidence that the request to sharpen the pick or the promise to sharpen it was prompted by fear of an injury in case it was not sharpened. *Held*, under the evidence that the trial court should have granted defendant's request for a peremptory instruction. NIXON, P. J., dissents and *holds* that under the evidence the judgment in plaintiff's favor should stand.

2. ————: ————: Duty as to Tools Furnished Servant. The master is not required to furnish tools or appliances that are absolutely safe, but only such as are reasonably safe for the purpose for which they are to be used, and what is ordinary care in a particular case depends upon the nature and character of the tools or appliances and the dangers to be encountered in their use.

3. ————: ————: Burden of Proof. The burden of proving negligence on the part of the master rests upon the servant, and his case is not always made by showing the condition of the tool or appliances and the resultant injury.

4. ———: ———: ———: **Degree of Care.** Ordinarily where a servant is injured because of the use of a defective appliance, he must present to the jury a state of facts that will show that at the time of the injury an ordinarily prudent man, in the place of the master, would have apprehended that the use of the tools or appliances furnished would by reason of their condition probably result in injury to the servant.

5. ———: ———: **Use of Simple Tool: Knowledge of Servant: Apprehending Danger.** Where a servant works with an ordinary tool like a pick and is possessed of all the knowledge in relation to its safety that anyone possesses, the fact that he apprehended no danger at the time is the strongest possible reason why the master should not be held responsible for not having apprehended the danger and provided against it.

6. ———: ———: ———: ———: ———: **Contributory Negligence.** It is the duty of every one to use ordinary care for his own safety and if a servant, using a pick that is dull, in pulling ties out from under defendant's track, apprehended danger of falling on account of the pick slipping out of the tie, he could have placed one foot back and thus braced himself against the apprehended fall and having failed to do so he would be guilty of contributory negligence in not taking so simple a precaution. NIXON, P. J., dissents, and holds that the question of contributory negligence would depend upon the servant's position when the pick slipped and would ordinarily be for the jury to determine.

7. ———: **Duty of Master: Simple Tools.** The duty of the master to examine and repair the instrumentalities used by the servants is a continuous one, and is imperative upon the master whether the appliance furnished is simple and easily understood, and the defects open to the servant's observation, or is a piece of complicated machinery. NIXON, P. J., in dissenting opinion.

8. **PROXIMATE CAUSE.** A proximate cause is one which in natural and continuing sequence is unbroken by an intervening cause, producing the injury and without which the result would not have happened. NIXON, P. J., in dissenting opinion.

9. ———: **Jury Question.** Whether the defect complained of was the proximate cause of an injury is usually a question of fact for the determination of the jury. NIXON, P. J., in dissenting opinion.

10. **NEGLIGENCE: Unusual Accident.** A defendant charged with negligence is to be held liable for any injury inflicted upon another, if after the injury is completed it appears to have been the natural and probable consequence of his act, or omission, and hence the fact that it was unusual will not defeat a recovery. (NIXON, P. J., in dissenting opinion).

11. CONTRIBUTORY NEGLIGENCE: Using Defective Appliance. The proof that plaintiff was injured by the use of an appliance specifically defective with knowledge of its defect and dangers will not defeat a recovery, unless he knew or ought to have known that the use of an appliance would expose him to imminent peril. NIXON, P. J., in dissenting opinion.

12. ———: ———: Master and Servant. If the master fails in his duty and if the servant knows, or by the exercise of ordinary care could know that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances or quit the service, if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances, notwithstanding they are not so reasonably safe, and if he does so and exercises ordinary care and caution and is injured, he does not waive his right to compensation for injuries received in consequence thereof, nor is he guilty of negligence. NIXON, P. J., in dissenting opinion.

13. NEGLIGENCE: Standard of Due Care. The rule of law is firmly established in this state that no man is held to a higher degree of skill than the fair average of his profession or trade and the standard of due care is the conduct of the average employer. NIXON, P. J., in dissenting opinion.

14. WITNESSES: Evidence: Expert Witness: Hypothetical Question. The right of medical experts having proper knowledge and capacity to give an opinion in proper cases, is generally admitted, but there is a distinction between "drawing a conclusion" and "giving an opinion." The hypothetical question in this case is approved. NIXON, P. J., in dissenting opinion.

15. MASTER AND SERVANT: Duty of Master: Putting Simple Tool to Uncommon Use. The construction of a common pick and its ordinary use to break up closely compacted soil and rock is a matter of common knowledge and the risk of using it in the usual way, when in normal condition of repair, would be presumed to be well understood by a laborer, but in this case the pick was put to an uncommon use by the defendant, that of pulling out ties with its point, and the master's liability must be considered not by the usual way of using such tool, but by the way it was actually used by the direction of the employer. NIXON, P. J., in dissenting opinion.

16. ———: ———: Duty to Examine and Repair. The master is required to exercise care that no risks and hazards to those in his employ should be unnecessarily increased, and the vigilance of the master must not relax after the instruments are put into use by the employee and extends to the duty of examination and repair. NIXON, P. J., in dissenting opinion.

17. ———: ———: ———: Usual Way of Conducting Business. Where the business is conducted in the usual and ordinary way and the way commonly adopted by those engaged in the same business, a jury cannot be permitted to say that it is a negligent way for which a liability should be imposed, but the master is exculpated upon compliance with the common usuage only on the condition that 'the instrumentality is kept in good repair. NIXON, P. J., in dissenting opinion.

18. NEGLIGENCE: Jury Question. Negligence is a breach of duty to exercise reasonable care under the circumstances and it is for the jury to consider all the circumstances and surrounding conditions and say whether defendant's act or omission was or was not violative of this obligation, and to say whether the conduct of the parties was such as would be expected of reasonable and prudent men under a similar state of facts. NIXON, P. J., in dissenting opinion.

Appeal from Stone Circuit Court.—*Hon. John T. Moore*, Judge.

AFFIRMED. CERTIFIED TO SUPREME COURT.

*Sizer & Kemp* for appellant.

(1) As respondent did not stand on its demurrer at close of plaintiff's case, but put on its evidence, appellant is entitled to all the evidence from the defendant's side in aid of his case. Phelan v. Paving Co., 227 Mo. 704; McPherson v. Railroad, 97 Mo. 253; Klockenbrink v. Railroad, 172 Mo. 683. (2) In reviewing a case to determine whether the court erred in giving or refusing a demurrer, the appellate court will look to the whole evidence, no matter by whom offered. Eswin v. Railroad, 96 Mo. 294; Jennings v. Railroad, 112 Mo. 268. (3) After plaintiff called attention of foreman to the condition of pick and received the assurance that he would attend to it as soon as he got time, or the next morning, that eliminated the question of assumption of risk from this case. Fouts v. Swift, 113 Mo. App. 532; Hough v. Railroad, 100 U. S. 225; Holman v. Iron Co., 152 Mo. App. 681; Har-

ris v. Railroad, 146 Mo. App. 551. (4) The master's negligence, if proven, or conceded, eliminates the question of assumption of risk. Holman v. Iron Co., 152 Mo. App. 685; Wiley v. Gas Co., 132 Mo. App. 380; Warren v. Railroad, 113 Mo. App. 498; Tinkle v. Railroad, 212 Mo. 468; Strickland v. Woolworth, 143 Mo. App. 528; George v. Railroad, 225 Mo. 364. (5) Where the master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance. Meyer v. Mfg. Co., 67 Mo. App. 393; Conroy v. Iron Co., 62 Mo. 39; Burkhead v. Horse & Mule Co., 221 Mo. 700; Morden Co. v. Fries, 81 N. E. 862. (6) It was the duty of the company to keep the place and appliances in reasonably safe repair and condition. A failure to do so was negligence. Burkhead v. Horse & Mule Co., 221 Mo. 710; Curtis v. McNair, 173 Mo. 270. (7) Although the pick was a simple tool, yet a review of the cases in Missouri with reference to the pick and maul and claw bar, all simple tools, when being used in and about railroads and tracks, will show that whenever negligence was conceded, admitted or proven, plaintiff has always recovered, when free of contributory negligence. Franklin v. Railroad, 97 Mo. App. 473; Browning v. Railroad, 118 Mo. App. 449; Deckard v. Wabash, 111 Mo. App. 117; Robins v. Mining Co., 105 Mo. App. 78; Blankenship v. Glass Co., 154 Mo. App. 483; Johnson v. Railroad, 96 Mo. 340; Prash v. Railroad, 151 Mo. App. 410; Harris v. Railroad, 146 Mo. App. 524.

*W. F. Evans* and *Mann, Johnson & Todd* for respondent.

(1) The court's action in sustaining motion for new trial was proper, because the court ought to have given defendant's demurrer offered at the conclusion

of plaintiff's case and renewed at the conclusion of all
the evidence.   Mathis v. Stock Yards Co., 185 Mo.
434; Blundell v. Mfg. Co., 189 Mo. 552; Meyers v.
Glass Co., 129 Mo. App. 556; Christy v. Railroad, 131
Mo. App. 266; Post v. Railroad, 121 Mo. App. 562;
Saversnick v. Schwarzchild Co., 141 Mo. App. 509.  (2)
The servant when he enters the employment of his
master assumes not only the risks incident to his em-
ployment, but all dangers which are apparent and
obvious as result thereof.   The master is no insurer
against all accidents that may overtake or befall the
servant in his employ.   Nugent v. Milling Co., 131 Mo.
245; Mathis v. Stock Yards Co., 185 Mo. 445.   (3)   It
is well settled law that an employer is not bound to
furnish an employee the safest known appliances, tools
or machinery, the latest approved patterns of tools and
improvements thereof, nor does he  render  himself
liable by failure to discard tools or appliances which
are not suited and to supply their place with those
which are more safe.   Steinhauser v. Spraul, 127 Mo.
562; Blanton v. Dold, 109 Mo. 64; 2 Thompson on
Negligence, 983; Mathis v. Stock Yards Co., 185 Mo.
445.   (4)   It is equally well settled that a master can
conduct his business in his own way, and the servant
knowing the hazards of his employment as the busi-
ness is conducted impliedly waives the right to com-
pensation for injuries resulting from causes incident
thereto, though a different method of conducting the
business would have been less dangerous.   Bradley
v. Railroad, 138 Mo. 302; Mathis v. Stock Yards Co.,
185 Mo. 446.   (5)   An injury cannot reasonably be
anticipated that would not have happened except un-
der exceptional circumstances.   It was not necessary
to take precautionary measures to prevent it, although
if taken the injury would not have happened.   Hysell
v. Swift & Co., 78 Mo. App. 39; Moffatt v. Railroad,
113 Mo. App. 544; Mfg. Co. v. Railroad, 117 Mo. App.
453.   (6)   A master is only required to use ordinary

care in furnishing reasonably safe appliances for the servant, and does not have to provide against all possibly anticipated happenings. Browning v. Railroad, 118 Mo. App. 456; Fuchs v. St. Louis, 167 Mo. 645; Pinkley v. Railroad, 92 N. E. 896. (7) The rule is that where a master has promised to repair and has not done so, the servant can recover for an injury caused thereby only when he relied upon the promise, and if he did rely upon the promise only if he was injured within a reasonable time after the promise was made. In other words, as soon as the period contemplated for the removing of the dangerous condition terminated the servant's position is precisely what it would have been if no promise had been given. That is to say, he reassumes the risk. Stalzer v. Packing Co., 84 Mo. App. 576; 1 Labatt on Master and Servant, 1204, sec. 425; Steel Co. v. Mann, 40 L. R. A. 781; Railroad v. Duffield, 47 Am. St. Rep. 310; Trotter v. Furniture Co., 47 S. W. 425; Andercisk v. Tube Co., 4 L. R. A. (N. S.) 918; Holloran v. Iron Co., 133 Mo. 480; Meyers v. Glass Co., 129 Mo. App. 562. (8) The court should have sustained the motion for new trial for the additional reason that the court erred in permitting Dr. Bailey to answer the hypothetical question put to plaintiff and to state that in his opinion such a fall as plaintiff received would probably have produced the condition which the doctor found him in, because it is not competent to permit a physician to testify that in his opinion the condition of plaintiff has probably been brought about by the fall. Taylor v. Railroad, 185 Mo. 239; Glasgow v. Railroad, 191 Mo. 366; Smart v. Kansas City, 208 Mo. 203; Roscoe v. Railroad, 202 Mo. 594; Holtzen v. Railroad, 140 S. W. 767; DeMaet v. Fidelity Co., 132 S. W. 732.

COX, J.—Action for personal injury caused by plaintiff falling while working as a section hand on

165 Mo. App.—34

defendant's track.  Judgment for plaintiff for $1000.
Motion for new trial sustained upon the ground that
the court erred in not sustaining a demurrer to the
testimony, and from the order sustaining the motion
for new trial plaintiff has appealed.

The injury came about as follows:  Plaintiff was
engaged in taking old ties out from under the rails
on defendant's track.  In doing this the usual course
and the one pursued by plaintiff was to take away the
ballast from the sides of the ties, then jack up the
rails sufficiently to permit the tie to be slipped out,
then imbed one end of the pick in the tie by a blow
with the pick and by pulling on the handle of the pick,
pull the tie out from under the rails.  On the occasion
of this injury, plaintiff attempted to strike his pick
into the tie but the pick was so dull it did not take hold
at the first blow.  He repeated the blow and it again
failed to catch but on striking the third blow, it seemed
to have a firm hold and he began pulling on it "very
gradually" when it slipped out and he fell backward
and received the injury of which he complains.  The
negligence of defendant relied upon for the recovery
is its failure to have plaintiff's pick sharpened.  The
contention of plaintiff being that if the pick had been
properly sharpened it would not have slipped out and
plaintiff would not have fallen.

Plaintiff testified that he had used the pick nearly
two months and at the time of the injury, the pick
had not been sharpened for a week and a half and was
very dull.  He had said to the boss:  "How much
longer will we have to work with these dull picks"
and the boss said:  "They are in bad shape and as
soon as I get time I will have them sharpened."  Con-
tinuing plaintiff testified:  "This day, when in that
condition, it was difficult for a man to work with pick
in that shape because of it being dull it was hard to
stick in the ties.  You could hardly get a dull pick in
the ties to stick.  The boss had promised to have the

picks sharpened the next morning." Q. "Why did you go ahead with the tool in that shape?" A. Because of the promise that he would have it fixed the next morning." Further: "I stuck my pick in the tie and as I went to make my pull I saw the pick was not properly imbedded in the tie and I taken it out and stuck it in the tie and saw it wouldn't hold again, and the third time I stuck the pick in the tie it seemed to be solid and I started to pull at it very gradually and my pick came out and I fell. . . . I worked practically all the time with a dull pick. It was getting a little duller all the time. It was good and dull practically all the time except the two or three days after sharpening. They would begin to get dull in two or three days. . . . My pick had slipped out various times but not so as to throw me. I can't say whether it had that day or not as I paid no attention to that and don't know as I would to this if I hadn't got the fall. It had slipped before this but not in the way it did this day. That was the first time I got a fall. It had slipped before but I say at different times. I never said many. I could not tell how many. Yes, when the pick got dull, it would slip out because you could not imbed it in the tie. I knew the pick was dull and knew it had not been sharpened. I won't say that I knew it was likely to slip because I never had been hurt before. I did not know it was going to slip with me. I never gave it any thought that morning. I never thought about getting hurt. I can't say I thought about the pick slipping out. I can't say it entered my mind for I don't know."

Golden Hankins, a witness for plaintiff testified: "We do not quit when the pick gets dull. We keep on working. We don't get so much done with a dull pick but I don't know as a fellow is much tireder. It is very difficult to get done what we do. Anybody ought to know when a pick is dull. If you don't stick a sharp pick in, they pull out. Sometimes they will

slip out of a creosote tie, not often though, not as often as a dull one.  You can hardly put a dull one in one.  A sharp one won't pull out if you catch them right."

W. H. Haney, a witness for defendant, testified: Q. "When you say it is customary to take out ties with a dull pick, you don't mean to say that it is a custom generally?"  A.  "No, not generally.  It is customary that the picks will get dull.  They would get dull down there, so much so that I would take the picks home occasionally and sharpen them."  Q.  "If it was the custom to take ties out with dull picks, why did you do that?"  A.  "It made it much easier work and didn't cost nothing to keep it sharp."  Q.  "And made it some safer to work with?"  A.  "Some safer, yes, sir."

The foregoing covers every material fact in this case.  Was it sufficient to send the case to the jury?  There are no difficult legal questions involved in this case.  The master is required to use ordinary care to furnish his servants with reasonably safe tools and appliances and must use the same care to keep them in reasonably safe condition and the servant must use ordinary care for his own safety.  The master is not required to furnish tools or appliances that are absolutely safe but only such as are reasonably safe for the purpose for which they are to be used, and what is ordinary care in a particular case depends upon the nature and character of the tools or appliances and the dangers to be encountered in their use.  [Franklin v. M., K. & T. R. R., 97 Mo. App. 473.]  The burden of proving negligence on the part of the master always rests upon the plaintiff and his case is not always made by showing the condition of the tool or appliances and the resultant injury.  To make a case, the plaintiff must present to the jury a state of facts that will show that at the time of the injury an ordinarily prudent man in the place of the master would have apprehended that the use of the tools or appli-

ances furnished would, by reason of their condition, probably result in injury to the servants.

To our mind, the testimony in this case solves every question in it against appellant's contention here. There is an entire absence of any testimony tending to show any duty resting upon defendant to keep plaintiff's pick sharpened in order to prevent his being hurt by using it as it was being used at the time of the injury. The only testimony that could by any possible construction lend any support to appellant's contention is the testimony of witness Haney to the effect that a sharp pick would be a little safer than a dull one. This was, at best, only stating a conclusion, but if we give it its full force, it is still not sufficient, for the fact that a sharp pick may be a little safer than a dull one does not prove that a dull one is not reasonably safe. A pick is a very simple tool with which every one is familiar and whether dull or sharp would not ordinarily cause apprehension of danger in its use, but be that as it may, plaintiff knew all about the pick he was using; knew its condition; knew a dull pick would not stick in a tie like a sharp one; knew it had been slipping out because it was dull, hence, must have known that it was likely to slip out at any time and yet he did not apprehend any danger of getting hurt in case it did slip out for he says: "I never gave it any thought that morning. I never thought about getting hurt." It had slipped out before and had not hurt him, so the thought of getting hurt on that day in case it should slip out again did not enter his mind. If he did not apprehend danger of getting hurt in case of a slip after he had used the pick for nearly two months and had experienced slips before, the master should certainly not be held to have anticipated injury in case of a slip. This is not a case of a latent defect or a case in which the master has superior knowledge of the condition of the appliances furnished but is a plain case of a man work-

ing with an ordinary tool and possessed of all the knowledge in relation to its safety that any one possesses and the fact that he apprehended no danger at the time is the strongest possible reason why no one else should be held responsible for not having apprehended danger and provided against it. The fact that the pick had slipped out several times before and the plaintiff had not fallen coincides with the common knowledge of every one that a pick slipping out as this one did is not likely to cause a man using it to fall and such a result would not be anticipated by any reasonably prudent man and, therefore, there is no basis for a charge of negligence on the part of the servants of defendant in not sharpening the pick. There being no reason to apprehend danger of injury to plaintiff by his use of it while dull, there could be no duty to keep it sharp for his protection. The sharpening of the picks was not done to protect the men using them from injury but was done to facilitate the work in which they were engaged.

If, however, we assume that defendant should have apprehended danger of plaintiff falling in case the pick should slip, plaintiff's case is not helped to any extent, for he would also be chargeable with the same apprehension and it would then have been his duty to have used ordinary care to have prevented it, and the fall could have been prevented by a very slight precaution. If he were to fall at all, he would of course, fall backward and had he taken the simple precaution to have placed one foot back and thus braced himself against the apprehended fall, it would have been prevented. It is the duty of every one to use ordinary care for his own safety and if there was any reason to apprehend a fall, then such apprehension would also have suggested guarding against it, and since this could have been so easily done plaintiff would have been guilty of contributory negligence in failing to take so simple a precaution.

Our conclusion is that the trial court was right in sustaining the motion for a new trial for the reason stated and the judgment will, therefore be affirmed. All concur.

The motion for rehearing is overruled by *Cox* and *Gray, JJ.* But *Nixon, P. J.,* was for granting the motion and files a dissenting opinion. For the reason set out in the dissenting opinion it is ordered that the case be certified to the Supreme Court.

## DISSENTING OPINION ON MOTION FOR REHEARING.

NIXON, P. J.—At the conclusion of the plaintiff's evidence in this case the defendant filed a demurrer, which being overruled by the court, defendant proceeded to introduce its evidence in defense. At the conclusion of all the evidence, it again tendered a demurrer which was likewise overruled. The jury returned a verdict for the plaintiff in the sum of one thousand dollars. Defendant thereupon filed its motion for a new trial which the circuit court sustained on the ground that there was not sufficient evidence to authorize a finding for the plaintiff.

The plaintiff's petition combines, to some extent, an action for liability for defendant's negligence, and an action for the assumption of risks of the service by reason of defendant's alleged promise to repair the instrument in the use of which plaintiff was injured. The principal instruction for the plaintiff authorized a recovery on the finding of certain facts on the ground that defendant had been guilty of negligence, and further states, "provided you further find that plaintiff at the time was working under an assurance from defendant's section boss that said pick would be sharpened." The latter clause imposed an unnecessary burden on plaintiff as the case was evidently tried on the theory of defendant's liability for negligence alone,

and not on the theory of defendant's assumption of ordinary risks of employment by reason of its promise to repair. Neither the instruction for the plaintiff nor those for the defendant present to the jury the facts necessary to enable the plaintiff to recover on account of defendant's promise to repair as a distinct and separate or independent cause of action. Under this condition of the record, we are not called upon under the position taken by the parties at the trial to enter upon a consideration of defendant's alleged promise to repair the pick as a distinct cause of action, and that question need not be considered in arriving at the sufficiency of the demurrer. Hence the argument of respondent and the authorities cited on that question are not relevant under the view we have taken of the case. The evidence of a promise to repair is proper and competent and is in the record to be considered on the question of the defendant's knowledge of the defect in the pick and its duty to repair.

The respondent contends that the motion for a new trial was properly sustained for the reason that the court erred in permitting Dr. W. T. Bailey, a witness for the plaintiff, to answer a hypothetical question put to him as a medical witness by the plaintiff. The question challenged was as follows: "Q. If some two or three weeks prior to the time you saw this man, if he should have, while taking out a tie from under the track on the railroad, north of Butterfield, Missouri—if he should have while pulling the tie from under there with a pick, stuck in the tie, and the pick should slip out and precipitate him backwards suddenly over a tie, and he should have a senation of pulling something loose in his back and have pain from that time until you saw him—if such a fall would probably have produced the condition you found him in?" The objection was as follows: "We object to the question for the reason that it calls for a conclusion of the witness and seeks to invade the province of the

jury and is not a proper hypothetical question." The objection was overruled, and the witness answered, "It probably would."

The right of medical experts, having proper knowledge and capacity, to give an opinion in proper cases is generally admitted. Our Supreme Court seems to have drawn a distinction between "drawing a conclusion" and "giving an opinion" as it has said, "To the trained legal mind there is an essential difference between permitting an expert to give an opinion and permitting him to draw a conclusion." [Glasgow v. Railroad, 191 Mo. l. c. 364, 89 S. W. 915.] In that case, however, the question, unlike the one in the case at bar, gave the witness the condition of the injured person as shown by other evidence, and then the expert witness was asked to state what was the cause of the facts—in other words to account for the condition in which he found the plaintiff at the time he examined her—and was allowed to state that the cause of the injury was a fall, which was the controverted question in the case. In the case at bar it will be seen that the facts as shown by plaintiff's evidence were stated in the question hypothetically and then the expert witness was asked, "if such a fall would probably have produced the condition you found him in?"

In the case of DeCourcy v. Construction Co., 140 Mo. App. 169, 120 S. W. 632, the hypothetical question under consideration was essentially the same as that propounded in this case. It was brought under consideration in a damage suit for an injury arising from an obstruction in a sidewalk, and the court declared that a physician's opinion that plaintiff's symptoms could have resulted from a fall was properly received in evidence, and that such evidence does not invade the province of the jury.

In the present case there was no substantial conflict in the evidence as to the cause of the injury and the evidence was cumulative and not prejudicial error.

Aside from all this, if a statement of inference, conclusion, or judgment, is accompanied by an enumeration of the facts on which it is based, the error, if any, is usually harmless, as the jury can estimate the true probative value of the statement. [17 Cyc., 60.]

The primary basis upon which the defendant's liability, if any, in this case must rest, is that growing out of its relation of master and consequent duty to repair the pick furnished the servant with which to do his work.

The construction of a common pick and its ordinary use to break up closely compacted soil and rock is a matter of common knowledge and the risks of using it in the usual way when in normal condition of repair would be presumed to be well understood by a laborer. But in this case the pick was put to an uncommon use by the defendant, that of pulling out ties with its point, and the master's liability must be considered not by the usual way of using such tool but by the way it was actually used by direction of the employer.

That it is the duty of the master to exercise reasonable care to furnish his servant a reasonable safe instrumentality with which to do his work as he requires it to be done is established by many decisions. The duty of the master to keep the appliances furnished his servant in a safe condition is precisely the same as the duty to furnish them in the first instance. He is required to exercise due care that no risks and hazards to those in his employ should be unnecessarily increased. [1 Labatt, Master and Servant, sec. 110, pp. 240-241.] This vigilance the master must not relax after the instruments are put into use by the employee, and extends to the duty of examination and repair. [Moore v. Railway, 85 Mo. 588.] This continuous duty to repair is as imperative upon the master whether the implement or appliance furnished is simple and easily understood and the defects open to the

servant's observation or is a piece of complicated machinery, the duty of the master being the same in both cases as to inspection and repair of the appliances. [Warner v. Railway, 62 Mo. App. 184; Harris v. Railroad, 146 Mo. App. l. c. 532, 124 S. W. 576, and cases cited; McCaffrey v. Glue Co., 143 Mo. App. 24, 123 S. W. 944.] All the servants of the common master, be they high or low, are entitled to equal protection against the master's negligence.

In this case, as the evidence of plaintiff abundantly shows, the plaintiff at the time he entered the defendant's service contracted with defendant for a sharp pick—that is, a pick in its normal condition—and defendant was under a legal obligation to repair the pick when it became dull; that was its duty. This duty the law imposed when the parties by contract assumed the relation of master and servant, and it was an imperative, non-delegable, continuous, duty. This duty, the evidence shows, in this instance the employer recognized by customarily sharpening the picks when they became dull. The defendant's section foreman, a witness for the defendant, speaking of the custom of defendant, stated: "When a pick gets dull, we always have it sharpened. We hardly ever use them over a week without their being sharpened." The defendant further recognized its duty to keep the picks of the section men repaired by its promises to repair. On the day before the injury the plaintiff called the section foreman's attention to the fact that the picks had not been repaired as had been promised, the plaintiff saying to him, "How much longer will we have to work with these dull picks?" to which the foreman replied, "They are in bad shape and as soon as I get time I will have them sharpened." On the morning of the day of the injury, when asked by plaintiff to have the pick repaired, the section foreman said, "I haven't time now but will as soon as I get time in the morning." Thus there was sufficient evidence on the ques-

tion of defendant's negligent failure to repair to carry the case to the jury. The chain of causation between defendant's negligence and plaintiff's injury was sufficiently close to authorize the jury to draw the conclusion that the injury was the result of the negligent failure of defendant to repair.

Plaintiff's evidence tended to show that he had been in the employ of defendant some three years and that during that time he had been engaged in the same service of removing ties from the roadbed with picks. He stated that a sharp pick when used to remove a tie from its bed under the rails as the section men ordinarily use it would not pull out, and that during the three years in which he had been so using picks he had never had a sharp pick pull out from a tie and never saw one pull out; that when picks became dull, they could not be imbedded properly in the tie and that they were liable to pull out; that the pick he was using at the time of the injury, since it had last been sharpened, had slipped out five or six times before the time when he fell. He further stated that at the time of his injury he stuck his pick in the tie and it seemed solid and that he started to pull the tie very gradually; that his pick pulled out and he fell backward over a tie and received his injury; that he was removing the tie from its beds in the usual way and was pulling at the pick handle and that the dull point of the pick broke loose from the tie, throwing him backward and causing his injury.

That the dangers of injury from using a pick were increased by the failure of defendant to repair it is shown by defendant's witness Haney who had ten years' experience as a section hand and who testified that the keeping of a pick sharp "made it some safer to work with." This was an opinion but it came from an expert of ten years' experience. Besides this, the nature of the work done with the pick and the likelihood of increased danger from the use of a dull in-

stead of a sharp pick was fully explained to the jury. The subject was one of common knowledge and the jurors from their experience were competent to draw correct conclusions. [Dakan v. Chase & Son, 197 Mo. l. c. 254, 94 S. W. 944.] The evidence was sufficient to authorize the jury to infer that the failure of defendant to repair unnecessarily increased the risks of the service in which plaintiff was engaged.

A "proximate cause" is one which in natural and continuing sequence is unbroken by an intervening cause producing the injury, and without which the result would not have happened. [Saxton v. Railway, 98 Mo. App. 494, 72 S. W. 717; Hull v. Transfer Co., 135 Mo. App. l. c. 122, 115 S. W. 1054; Hartman v. Berlin & Jones, 127 N. Y. Supp. l. c. 192.] In the last cited case, it is stated that the rule deducible from the adjudicated cases appears to be this: Given the defendant's negligent act and the injury, a determining question is, Would the accident have happened without the operation of the defendant's negligence? In this case the evidence warranted the conclusion that the injury was the natural result of the master's negligence; the jury had a right to draw that inference. The usual method of removing ties from beneath rails was, as we have said, by striking the point of the pick in the end of the tie and taking hold of the pick by both hands and applying sufficient muscular force to pull the tie from its bed beneath the rails toward the workman. While in this position, if the hold of the pick on the end of the tie should be suddenly broken, the workman would naturally lose his balance and be thrown backward, and it would not require one to be very deeply versed in the philosophy of mechanics to see that the natural result would be that the workman would fall in the manner that plaintiff fell and be injured.

But it is said that the master could not reasonably have foreseen and anticipated the injury and was

therefore not liable for negligence in failing to repair the pick. The proper inquiry in such cases is, not whether the accident might have been avoided if the person charged with negligence had anticipated its occurrence, but whether, taking the circumstances as they then existed, the defendant was negligent in failing to anticipate and provide against the occurrence. [Fuchs v. City of St. Louis, 167 Mo. l. c. 646, 67 S. W. 610.] As stated in the case of Hartman v. Berlin & Jones, supra, the decisive question is, "Was the accident or the resultant injury reasonably to be foreseen or anticipated? If, without the operation of the defendant's negligence, the accident would not have happened, and it was one reasonably to be foreseen and anticipated, the cause of action is established." Whether the defect was the proximate cause of an injury is usually a question of fact for the determination of the jury. [26 Cyc., 1151.]

Nor is it any defense for the employer that the injury was unusual; and hence the fact that it was unusual will not defeat plaintiff's recovery. A defendant charged with negligence is to be held liable for any injury inflicted upon another if after the injury is complete it appears to have been the natural and probable consequence of his act or omission. [Dean v. Railroad, 199 Mo. 386, 97 S. W. 910.] Otherwise stated, the negligence must be such that by the usual course of events it would result in injury unless independent moral agencies intervene in the particular injury. But when an event is followed in natural sequence by a result it is adapted to produce or aid in producing, the result is the consequence of the event. It is not necessary, however, that the injury should be the usual, necessary, or inevitable result of the negligence. [29 Cyc., 492, 493.]

Some importance is attached by respondent to the testimony of plaintiff that he did not apprehend that he was about to be injured by the dull pick slipping

at the time of the injury. We are of the opinion that this affords no basis for sustaining the demurrer to the evidence. The effect of plaintiff's testimony on that question was that he did not know that the pick was going to slip out and did not at the time think about being hurt. The fair interpretation of this testimony is that his injury was unexpected because he did not know that his pick was about to slip and cause him to be injured. Most personal injuries are unexpected. The person is thinking of his work or otherwise engrossed in his duties, and it would be an extraordinary doctrine indeed, opening a wide field for escape from legal liability, if the fact that the workman was not thinking of being injured but was engaged in his work at the time he was injured, should be construed to be a defense without further showing that his inattention produced want of care contributing to cause the injury.

Another insistency of the respondent is that plaintiff had several ways of doing his work in removing ties from beneath the rails besides striking the pick in the end of the tie and pulling it out; that he might get outside the tie and "nip" it against the rail; or that he could take the pick by the end and push the tie through underneath the rails. It is to be noticed that the evidence does not disclose that these ways would be any safer than the usual way, or that such methods of removing the ties was sanctioned by the section foreman who was in charge of the work. It is sufficient reply to say that the method of conducting the work as prescribed by the defendant was to pull the tie out after having fixed the pick in the end of it; that the picks were furnished by the defendant to the workmen to conduct the work in this way, and that defendant undertook to keep the picks in repair in order to enable the work to be done in that way. The employer, having selected the instrumentality and prescribed the manner in which it should be used, and

such instrumentality being customarily used in that way by the defendant and the work being done under the immediate superintendency of the defendant's foreman, plaintiff cannot be denied recovery for injuries received while in the line of his duty rendering service for the master in such customary way.

It is also earnestly contended by respondent that the appliance causing the injury was a simple implement; that plaintiff knew all about the condition of the pick as to its being out of repair and as to the danger of its slipping out of the tie when dull and that he was as fully possessed of all the facts concerning its defects as the master; and that hence the master was not liable.

The proof that plaintiff was injured by the use of an appliance specifically defective with knowledge of its defect and dangers will not defeat a recovery unless he knew or ought to have known that the use of the appliance would expose him to imminent peril. This rule is fully recognized by the so-called "unique" Missouri doctrine concerning assumption of risk and its relation to contributory negligence, which is as follows: If the peril of the servant in the performance of his duty is increased by the negligence of the master, and if the servant, knowing that the master has been thus negligent and that that negligence had rendered the performance of his duty more hazardous, continues in the performance of that duty, a question of contributory negligence then arises, not a question of assumption of risk. [Dakan v. Chase & Son, 197 Mo. l. c. 267, 94 S. W. 944.] This familiar principle has been otherwise stated as follows: If the master fails in his duty, and if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances or quit the service if he reasonably believes that by the exercise of proper care and caution he can

safely use the appliances, notwithstanding they are not so reasonably safe, and if he does so and exercises ordinary care and caution and is injured, he does not waive his right to compensation for injuries received in consequence thereof, nor is he guilty of negligence. [Blundell v. Manufacturing Co., 189 Mo. l. c. 559, 88 S. W. 103.]

The respondent to sustain its position in this case has quoted at great length from the opinion in the case of Mathis v. Kansas City Stock Yards Co., 185 Mo. 434, 84 S. W. 66. In that case the alleged defective appliance was a plank used by an engineer to stand upon in order to reach certain parts of the engine, and it was held that the plaintiff assumed the risk thereof as he knew and appreciated the danger. But in that case the question of negligence arising from the failure of the employer to repair the appliance furnished by defendant was not involved. It has been said that the opinion in the Mathis case is not very explicit as to just what rules of law it intended to apply. In Garaci v. Construction Co., 124 Mo. App. 709, 102 S. W. 594, the St. Louis Court of Appeals recognized the fact that many of the courts had adopted the rule that a servant with knowledge may assume the risk of dangers even if created by the master's negligence, but held that such is not the rule adopted by the Missouri Supreme Court, although there are some conflicting decisions. In the case of Lee v. Railway, 112 Mo. App. 372, 87 S. W. 12, it is said that in the Mathis case the Supreme Court reverted to the old doctrine of assumption of risk, but that the later cases do not recognize the Mathis case as repudiating the Missouri doctrine, and that since the adjudication of the Mathis case the court of last resort in this state had reiterated the rules in the earlier cases. The whole difficulty as to the Mathis case seems to have arisen from a misunderstanding of the

facts on which it rests, the majority opinion giving one interpretation and the dissenting opinion taking a different view.

The respondent has earnestly pressed upon our attention the following cases as announcing principles supporting its contentions: Blundell v. Manufacturing Co., 189 Mo. 552, 88 S. W. 103; Cristy v. Railroad, 131 Mo. App. 266, 110 S. W. 694; Meyers v. Glass Co., 129 Mo. App. 556, 107 S. W. 1041. The importance attached by respondent to these cases is such as to deserve at our hands a somewhat careful consideration.

The case of Blundell v. Manufacturing Co., went to judgment on the theory that plaintiff had assumed the risk from the use of a certain ladder from which plaintiff fell and was injured. The plaintiff in that case was employed by defendant to do millwright work and was engaged in constructing an elevator. At the time of his injury he was working in a room with a granitoid floor and having occasion for a ladder with which to do his work procured one of the usual pattern about twelve feet long and placed the lower end of it on the granitoid floor, the upper end extending through the ceiling of the room. Plaintiff got upon the ladder in order to carry on the work in which he was engaged. The ladder slipped and he fell and was injured for which he prosecuted his action. The evidence tended to show that the ladder had no prongs or hooks on it to keep it from slipping. The court stated that the gravamen of plaintiff's case was that defendant willfully, carelessly and negligently furnished him with a ladder that was not so constructed as to prevent it from slipping when one end thereof was placed on the granitoid floor, the charge in the petition being that the appliance was furnished by defendant as plaintiff's master. The court in considering the case states that there was no evidence that the ladder was furnished by the defendant, the plaintiff himself having testified that he found it ly-

ing with or close to the materials which were to be ued in the construction of the elevator, but that he did not know who placed it there or to whom it belonged. The court found from this evidence that plaintiff had entirely failed to show that the ladder was one of the appliances which the defendant furnished him. This effectually disposed of plaintiff's case, but the court continued the discussion, *arguendo*: "But assuming that the ladder was furnished by the defendant, the failure of the defendant to provide prongs or safety hooks to keep the ladder from slipping, is not sufficient to make the defendant liable in this case. The ladder was a simple appliance, one that is familiar to every grown man. Its liability to slip when not resting firmly or securely is a matter known to all men. Yet ladders are constantly used, and very few of them have prongs or safety hooks thereon" (1. c. 565).

The material element distinguishing that case from the one at bar is that the ladder was not in any way out of repair and at the time of the injury it was in precisely the same condition as when the plaintiff found it. Besides this, it was used in the way that ladders are ordinarily used and was of the standard pattern commonly employed by those engaged in doing work that the plaintiff was engaged in at the time of his injury. There was no suggestion at the trial of negligence or failure on the part of the defendant to repair, which is the basis of plaintiff's recovery in the present case. The court with this evidence before it could not have held otherwise than that plaintiff assumed the risks arising from the use of the ladder.

The case of Cristy v. Railroad was also a ladder case, the cause of action as stated in the petition being based on the defendant's promise to repair an old and dilapidated ladder. The petition alleged and the evidence showed: "That the ladder was old and defective and too weak to bear his weight, and that it had been so for a long space of time. That its condi-

tion was known to defendant or might have been known by the use of ordinary care and oversight. That some time prior to the injury he informed the defendant of the dangerous condition of the ladder, and that it promised to repair, and that relying on the promise he continued to use the ladder, until the day he was hurt when he ascended to his work and while at work it broke and threw him to the ground, whereby he was permanently injured.''

It will be seen that this case goes to judgment against plaintiff on the theory of the plaintiff's contributory negligence after the master had been negligent in failing to supply the proper implements for plaintiff's use. The evidence tended to show that defendant's foreman knew the ladder was in bad condition, but the court says it does not show that plaintiff was ordered to continue to use it, or that there was any promise of repair. As the action was based on a promise to repair, the evidence of plaintiff that there was no such promise determined the action in favor of the defendant. But the court, *arguendo*, discussed the question of whether if there had been a promise to repair the defendant would have been liable. We quote: ''. . . he describes the ladder in such a way as to show that its condition would have suggested to any one that it could not be used without imminent risk. His experience with it enabled him to know its condition better than any one else. It was a simple appliance, so old, scarred and patched as to carry on its face a warning to the most thoughtless and indifferent. According to his own evidence there was not room for two opinions.'' Judgment was therefore given the defendant on the ground that the plaintiff as a matter of law on his own testimony was guilty of contributory negligence. It will be seen that the evidence in the case in the opinion of the court eliminated the promise to repair, and that although the negligence of the defendant had been shown in furnishing such a

defective appliance, yet as it further appeared that the appliance was so obviously dangerous that a reasonably prudent man would not have continued to use it because the danger of using such an appliance was so fraught with such danger as to threaten immediate injury, the plaintiff under these circumstances as a matter of law was guilty of contributory negligence.

The case of Meyers v. Glass Co., also went to judgment for the defendant on the theory of plaintiff's contributory negligence. The defective implement in that case which caused the injury was an old, broken-down, two-horse wagon, belonging to the defendant and which plaintiff was at the time was using as defendant's servant for the purpose of hauling dirt. The special defect in the wagon was that the "hammer strap" was not bolted or otherwise securely fastened to the tongue of the wagon but was toggled up with a piece of common baling wire which condition was well known to the plaintiff. The plaintiff in the course of his duty of hauling loads was required to go over rough places in the road and in hauling heavy loads of dirt over these places there was great danger of the wire connecting the hammer strap with the tongue giving way and thereby letting the double-trees loose from the wagon, which would detach the horses and thus start them ahead, jerking the lines loose from the driver as he stood on top of the load and pulling him off. Plaintiff knew all this and had complained of it several times. At the time of the injury he was standing on top of a load of dirt with the lines wrapped around his hands when the wire that held the double-trees broke loose and the team went suddenly forward and pitched him to the ground. He stated that he knew the wire was liable to give way any moment in pulling up the incline where he was injured. He knew that by sitting down on the load there was no danger of being hurt if the wire did break, but that by standing up on the load there was danger of being dragged

off the wagon by the sudden forward movement of the horses pulling on the lines, and that if he let go of the lines even when standing on the load he would be safe. The plaintiff knew all the-danger there was in the defective contrivance and the mode of using it. He knew and in effect said that he could not with ordinary care continue to work with it safely. But in addition to that, instead of using ordinary care, he gave no heed and was guilty of the most careless conduct he could have adopted by standing up on the load and wrapping the lines around his hands, so that he would almost necessarily be jerked off. Under this condition of the facts there could be no reasonable doubt but what the danger to which the plaintiff exposed himself was imminent and extra-hazardous, and the court declared that under the law plaintiff on his own evidence was guilty of contributory negligence and denied recovery.

Under-the Blundell case, supra, it will be seen that no question of the failure of the defendant to repair and consequent breach of duty arose. In the other two cases which we have just considered, although the master's negligence had been shown, the servant exposed himself to dangers so imminent and extra-hazardous that his act as a matter of law was declared to be contributory negligence. This rule cannot be applied in the case now under consideration and it canot be said as a matter of law that under the evidence the plaintiff by continuing to work with the dull pick in pulling out ties after the negligent failure of the master to repair exposed himself to risks that were imminently perilous and extra-hazardous, and hence, as a matter of law, he was not guilty of contributory negligence.

The respondent also contends that the test of negligence is the ordinary usage and custom of those engaged in the same business, and that in the light of all the testimony in this case, examined by this standard,

Lowe v. Railroad.

there was no showing of any negligence on the part of the defendant that would carry the case to the jury.

The rule of law is firmly established in this state that no man is held to a higher degree of skill than the fair average of his profession, or trade, and the standard of due care is the conduct of the average prudent man; and no jury can be permitted to say that where the business is conducted in the usual and ordinary way and the way commonly adopted by those engaged in the same business, that it was a negligent way for which a liability should be imposed. [Brands v. St. Louis Car Co., 213 Mo. l. c. 708, 709, 112 S. W. 511.]

*But even this rule of law is subject to exceptions. The master is exculpated upon compliance with common usage only on the condition that the instrumentality is kept in good repair. This is clear both on principle and authority.* [1 Labatt, Master and Servant, sec. 46, p. 119; Bender v. Railway, 137 Mo. 240, 37 S. W. 132.] This amounts in effect to the doctrine that a servant does not assume any risks arising from the master's negligence. The standard, as we have seen, in conformity to the usual and ordinary way commonly adopted by those in the same business. It is to be observed that there is no evidence in this case in any way tending to show how ties were generally removed from beneath rails, nor that dull picks were commonly used by any other railroad company in removing ties from the roadbed. Hence no support is given to exculpate the master in this case by any showing that defendant only followed the common usage of others engaged in the same business. On the contrary, the only evidence as to the methods of any railroad company is the evidence introduced as to the customary way of using the pick by the defendant company itself, and it goes without saying that defendant could not adopt a negligent way and then justify itself by following such usage. Besides that, as we

have said, the evidence in this case tends to show by
the defendant's own witnesses that it was not custo-
mary in the transaction of its business to use dull
picks to pull out ties, but that the section men gen-
erally started to work with sharp picks and that when
they became dull the defendant had then sharpened.
M. T. Gray, a witness for the defendant on this sub-
ject, stated: "When a pick gets dull, we always have
it sharpened." W. H. Haney, a witness for the de-
fendant, stated: "When you say it is customary to
take out ties with a dull pick, you don't mean to say
that is the custom generally? A. No, not generally."
Henry Gray, the section foreman, testified: "I made
an average of having them (the picks) sharpened,
when the company did not send them, once a week my-
self. . . . We hardly ever used them over a week
without being sharpened." So that from the standard
of usage under the evidence in this case as to the man-
ner of carrying on its business the defendant was not
exempt from liability. At most, it was a question for
the jury.

It is further claimed that the demurrer should
have been sustained because the plaintiff did not exer-
cise proper care in the use of the pick; that when the
pick did break loose from the tie, the servant by the
exercise of ordinary precaution could have prevented
the injury, and that on this account—the plaintiff hav-
ing failed to exercise ordinary care—the master was
relieved of liability. In other words, that plaintiff was
guilty of contributory negligence as a matter of law.

An examination of the evidence fails to show the
immediate surroundings of the plaintiff at the time the
injury occurred. There is no evidence as to what pre-
cautions in fact he may have taken to protect himself,
and we certainly cannot presume what the law does
not presume, that he did not exercise ordinary care.
Whether in fact he did use the proper care or not
would depend largely as to where he was standing

at the time he fell—as to whether it was upon an embankment, or level ground—or whether he was standing in the midst of loose ties, or other circumstances. We are afforded no light on this question. Besides that, it must be recollected that the injury like most injuries was unexpected, and that when the pick did pull loose plaintiff acted in an emergency in protecting himself. The want of due care under such circumstances would be a matter of defense under defendant's affirmative plea of contributory negligence, and being an affirmative defense, the burden of proof was upon the defendant. There being no showing as to what degree of care plaintiff did exercise after the pick broke loose from the tie, no proper evidence was developed, available to the defendant, under the plea of contributory negligence, and had there been such evidence, it would ordinarily have been a matter not of law but of fact that was submitted to the jury under proper instructions.

In cases of personal injury where damages are claimed for negligence, the sufficiency of the evidence to support a verdict is generally challenged and the court is asked to declare as a matter of law the insufficiency of the evidence to support the verdict of the jury. This brings into relief the respective provinces of court and jury in passing on the evidence. The statement of the rules governing in such cases frequently differ in details, but they embody certain vital and necessary elements. Great caution has generally been shown by the courts not to overstep their just functions and to respect the just right of the litigants to a trial by jury.

The rule is well established that in reviewing a judgment upon a demurrer to the evidence, plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence in the case, and to every legitimate inference warranted by the proof, and courts are required to examine the matter under this

favorable rule for the plaintiff. [Mills v. Bunke, 69 N. Y. Supp. 96, 97.] Every case, of course, must be determined by the peculiar facts and circumstances surrounding it as there is no absolute rule in regard to negligence. When reasonable men may differ as to whether the inferences drawn by the jury from the facts are legitimate, the judgment of the jury must be upheld by the court. [Pauck v. St. Louis Dressed Beef and Prov. Co., 166 Mo. 639, 66 S. W. 1070; Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588.]

Negligence is ordinarily a question of both law and fact. On account of its peculiar elements it is properly submitted to the jury. Negligence is not a fact which is susceptible of direct proof from the evidence, and is frequently an issue where facts are not controverted. If the accident would not have happened but for the defendant's negligence, then whether or not the accident was reasonably to have been anticipated must be left as a question of fact to the jury. [Hartman v. Berlin & Jones, 127 N. Y. Supp. l. c. 194; Harris v. Railroad, supra, l. c. 533.] Under this rule this case was properly left to the jury. "Whether the injurious consequences were such as ought reasonably to have been foreseen by the servants of the defendant was peculiarly a question of fact for the determination of the jury. To relieve one from liability, the precaution taken must be sufficient under ordinary circumstances to prevent accidents and injuries. [21 Cyc., 471.] Negligence is a breach of duty to exercise reasonable care under the circumstances, and it is for the jury to consider all the circumstances and surrounding conditions, and say whether the defendant's act or omission was or was not violative of this obligation, and to say whether the conduct of the parties was such as would be expected of reasonable and prudent men under a similar state of affairs (21 Am. and Eng. Ency Law, 501)." [Vaughn v. Brewing Co., 153 Mo. App. 48, 132 S. W. 293.] In the case of Blank-

Lowe v. Railroad.

enship v. Paint and Glass Co., 154 Mo. App. l. c. 489, 135 S. W. 970, it is said: "When plaintiff proved the defect in the tool and that he was in the exercise of ordinary care while he was so injured, and that his injury was caused by the said defect, he had made out his case." In actions between master and servant, where the servant's injury was caused by a defective appliance, when all the details of the construction and use of the appliance are before the jury, their finding is binding on the courts. [Bowen v. Railway Co., 95 Mo. 268, 8 S. W. 230.] We think that under these rules the verdict of the jury should be sustained. The amount of the verdict does not show that the jury were governed by bias, prejudice or passion. The facts submitted to the jury from which their inferences were to be drawn involved only principles with which an ordinary juror was perfectly familiar in every-day life and from which he was well qualified to draw reasonable inferences; and for this reason, where the testimony is confined to matters of common experience and observation and where the damages arising from the use of tools were fully explained by the evidence, the inference as to defendant's negligence under proper instructions of the court could be drawn as correctly by the twelve men in the jury-box as by the one man on the bench, and the one man, so far as I can see, would possess no greater insight derived by experience and would possess no gift of illumination that would give his judgment any superiority over that of the twelve men.

I am therefore of the opinion that the defendant's demurrer to the evidence was properly overruled and that the granting of the new trial was erroneous; that such order should be set aside, and that the original judgment entered upon the verdict of the jury should be reinstated.

For the reasons stated in the foregoing opinion, I do not feel free to concur in the opinion of the ma-

jority of the court in this case. I deem the majority opinion in conflict with numerous decisions of our Supreme Court, among others, the following: Dakan v. Chase & Son, 197 Mo. 238, 94 S. W. 944; Bowen v. Railway Co., 95 Mo. 268, 8 S. W. 230; and other cases hereinbefore cited. Wherefore I respectfully dissent from the conclusion of the majority and ask that the cause be certified to the Supreme Court for a final determination.