# BLUNDELL, Appellant, v. WM. A. MILLER ELEVATOR MANUFACTURING COMPANY.

### Division One, June 15, 1905.

1. **NEGLIGENCE: Master and Servant: Helper: Assumption of Risk.** Plaintiff, an expert in the construction of elevators, was employed by defendant in the doing of the mill-wright work in the erection and construction of a freight elevator in the first story of a building. He gathered such tools as he thought he would need, and asked an officer of defendant for a helper and was told that he could not have a helper until the afternoon, and to go ahead and put up the guide posts, and a man would be sent to help do the heavier work. He made a hole for a guide post in the granitoid floor, set up the post, went to the upper floor and secured a ladder that lay near by, placed it on the granitoid floor, the upper end extending above the upper floor, mounted the ladder, and was engaged in the work of completing the setting of the post when the ladder slipped and he fell and received the injuries for which he sues. The ends of the ladder that rested upon the granitoid were rounded. It was not shown that the ladder belonged to defendant. The manner of doing the work was left entirely with plaintiff, and there were other parts of the work which he could have safely done, and which were necessary to be done, without the assistance of a helper. *Held*, that plaintiff took the risk of doing the work with the appliances and help that were furnished, and cannot recover.

2. ——: ——: ——: **Ladder.** The plaintiff, having failed to show that the ladder which he used was one of the appliances furnished him by defendant, cannot recover on the theory that the ladder furnished had no prongs or hooks to prevent it from slipping while resting on the granitoid floor. *Held*, also, that, the evidence showing that the elevator guide posts which plaintiff was ordered to put up extended above the floor above, and plaintiff could have reached that floor by a stairway and did prior to his injury so reach it, and there being nothing in the case to show that it was obligatory on him to use the ladder, he cannot recover even if it were an unsafe appliance and furnished by defendant.

3. ——: ——: **Dangerous Appliance: Ladder.** A ladder twelve feet long, without prongs or hooks to keep it from slipping, is not a dangerous appliance, but a very simple one and safe in the hands of an experienced man for such uses as ladders are usually applied to.

Blundell v. Mfg. Co.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Wm. H. Clopton* for appellant.

(1) ˙The employer is charged with the duty of not subjecting his servants to risks by his own negligence. And a servant cannot assume to bear the consequences of the master's negligence. The employer is required to use ordinary care in providing secure instrumentalities which the servant is required to employ in his work. Curtis v. McNair, 173 Mo. 280; Wendler v. Peoples' H. F. Co., 165 Mo. 527; Settle v. Railroad, 127 Mo. 343; Pauck v. Dressed Beef Co., 159 Mo. 467; Blanton v. Dold, 109 Mo. 76; Gibson v. Railroad, 46 Mo. 163; Huhn v. Railroad, 92 Mo. 447; Soeder v. Railroad, 100 Mo. 681; Williams v. Railroad, 119 Mo. 316; Rodney v. Railroad, 127 Mo. 676; Hudler v. Buck S. R. Co., 136 Mo. 3. (2) The danger of using the ladder without the assistance of a helper was not so patent and obvious to appellant as to relieve respondent from liability. Conroy v. Iron Works, 62 Mo. 39; Stoddard v. Railroad, 65 Mo. 520; Huhn v. Railroad, 92 Mo. 440. (3) Respondent directed appellant to proceed with the work without a helper—promising to furnish one at noon. Stoddard v. Railroad, 65 Mo. 514; Thorp v. Railroad, 89 Mo. 650; Stephens v. Railroad, 96 Mo. 212; 2 Thomp. on Neg., 975; Keeghan v. Kavanaugh, 62 Mo. 230.

*Thos. G. Rutledge* and *Seddon & Holland* for respondent.

The court did not err in giving a peremptory instruction at the close of plaintiff's testimony: (1) Because the evidence failed to show that the ladder upon which plaintiff was working when he fell was furnished

by defendant. (2) Because there was no evidence tending to sustain the allegation of plaintiff's petition that defendant was negligent in failing to furnish plaintiff a helper, and plaintiff assumed the risk of working without one. Leitner v. Grieb, 77 S. W. 764; Steinhauser v. Spraul, 127 Mo. 541; Nugent v. Kauffman M. Co., 131 Mo. 241; Halloran v. Union Iron & F. Co., 133' Mo. 470; Winkler v. St. L. Basket & Box Co., 137 Mo. 394. (3) Because, even had defendant been negligent in failing to furnish a helper before noon the risk of working without one until that time was expressly assumed by plaintiff. Devitt v. Railroad, 50 Mo. 302; Cagney v. Railroad, 69 Mo. 416; Smith v. Railroad, 69 Mo. 32; Price v. Railroad, 77 Mo. 510; Nugent v. Milling Co., 131 Mo. 241; Lucey v. Oil Co., 129 Mo. 32; Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Epperson v. Postal Tel. Co., 155 Mo. 346; Roberts v. Tel. Co., 66 S. W. 157; Matthis v. Kansas City, etc., 84 S. W. 66; Railroad v. McDade, 135 U. S. 554; Railroad v. McDade, 191 U. S. 64; Miller v. Cordage Co., 126 Fed. 195; Higgins v. Carpet Co., 79 Fed. 900; Kneisley v. Pratt, 148 N. Y. 372; Goodrich v Washington Mills, 160 Mass. 234; O'Malloy v. Boston Gas, 158 Mass. 135. (4) Because there was no evidence to sustain the allegation of plaintiff's petition that defendant was guilty of negligence in furnishing a ladder which was not so constructed as to prevent it from slipping on a granitoid floor, and plaintiff assumed the risk of using same. Minnier v. Railroad, 167 Mo. 99; Steinhauser v. Spraul, 127 Mo. 541; Halloran v. Union Iron & Foundry Co., 133 Mo. 470; Winkler v. St. L. Basket & Box Co., 137 Mo. 394. (5) Because, even had defendant been negligent in failing to furnish a ladder equipped with prongs, plaintiff had full knowledge of the exact structure of the ladder, and assumed the risk of using same.

Steinhauser v. Spraul, 127 Mo. 541; Borden v. Daisy Rolling Mills, 98 Wis. 407; Cahill v. Hilton, 106 N. Y. 512; Wood v. Tileston H. Co., 13 Amer. Neg. Rep. 321; Marsh v. Chickering, 101 N. Y. 396.

MARSHALL, J.—This is an action for $10,000 damages for personal injuries alleged to have been received by the plaintiff on the 17th of May, 1899, while in the employ of the defendant and engaged in the work of erecting a handcar freight elevator in a building, number 21 South Third street, in the city of St. Louis.

At the close of the plaintiff's case, the court sustained a demurrer to the evidence, the plaintiff took a nonsuit with leave and after proper steps appealed to this court.

### THE ISSUES.

The petition states that the defendant is a domestic corporation, and that on the 17th of May, 1899, the plaintiff was employed by the defendant to erect an elevator in the building on the west side of Third street in the city of St. Louis; that in order to properly do the work it was necessary for the plaintiff to ascend a ladder from the basement to the second (first) floor; that he requested the defendant to furnish him the usual and necessary laborers or helpers to assist him, together with necessary tools and appliances, but that defendant "wilfully, carelessly and negligently failed either to furnish said helper, or to furnish him with the necessary and proper tools and appliances to enable him to properly and safely do said work, in this, that the ladder furnished by defendant and which he was directed to use and did use, was not so constructed as to prevent it from slipping or giving way when placed upon a granitoid flooring or any smooth surface;" that in doing the work he ascended the ladder, resting the base thereof on the granitoid floor of the basement; that the ladder slipped and fell and he sustained the injuries complained of.

The answer is a general denial, with a plea of contributory negligence, and of assumption of risk.

The case made is this:

The plaintiff was engaged in the business of constructing elevators, or more properly speaking, doing the mill-wright work in the erection and construction of elevators. He had been engaged in that business about twenty-five years and prior to the accident had worked for the defendant many times, and also for other persons and companies that were engaged in such business. The day before the accident he applied to the defendant for work and was told that he would be employed the next morning. Accordingly on the next morning, when he presented himself for work, he was employed to put up a handcar freight elevator in the building numbered 21 South Third street. Said elevator was to extend from the basement to the first floor, a distance of ten feet. When employed, one of the officers said to him: "Pick up your tools and come with me and put up a handcar elevator." Accordingly, the plaintiff went to his tool chest and picked up such tools as he thought he would need, and then asked where the helper was. The officer answered: "Well, they are busy just now and I can't let you have a man until noontime." The officer of the defendant then accompanied the plaintiff to the building and pointed out to him some materials that were lying on the floor of the building, and told him to go ahead and put up the guide posts that run on each side of the platform, and he would send a man to help him at the heavier work upstairs. The hatchway had not been completed by the carpenters who were engaged in the construction of the building, and the plaintiff first proceeded to complete the hatchway in the floor of the first story for the elevator. After so doing he went into the cellar, the floor of which was made of granitoid. He made a hole through the granitoid for one of the posts to rest in, and set up the post.

He then went up to the first floor of the building and found a ladder twelve feet long, which was lying with or in close proximity to the materials intended to be used in the construction of the elevator. He placed this ladder in the hatchway, the lower end resting on the granitoid floor of the basement, and the upper end extending above the floor of the first story. The end of the ladder which rested on the granitoid was rounded. The plaintiff then got onto the ladder for the purpose of completing the work of setting up the guide post, and while so engaged, the ladder slipped, and he fell and was injured.

Respecting the ladder, the only testimony in the case is that of the plaintiff himself, who testified as follows: "Question. Now, you don't know whom this ladder belonged to, do you? Answer. I don't know. It was lying there with the elevator material; that is all I know about it. Mr. Hackman told me that was the material I was to use, and the ladder was lying there. I supposed it belonged to Mr. Miller, but I wasn't sure about it, and don't know now who it belonged to. Question. And you took this ladder and put it down to the basement floor? Answer. Yes, sir. Question. The ladder itself was perfectly sound. Was it? Answer. It looked to me to be sound. Yes, sir. Question. Was it sound? Answer. From all appearances it was sound." The plaintiff says he placed the foot of the ladder at a distance of about two and one-half or three feet from the wall; that the reason the ladder slipped was because it was not equipped with prongs. "Question. Now when you picked this ladder up and took it down there, you saw, didn't you, that there was no fastenings or anything of that kind on the bottom of it? Answer. There was no iron on the bottom of it. Question. You saw that yourself? Answer. Yes, sir."

The plaintiff further testified that he was familiar with the use of ladders and understood how to handle them. He further testified that at no time prior, when

he had worked for the defendant, had the defendant ever used or furnished a ladder with a prong or fastening attached thereto to keep it from slipping. The testimony showed that the building, in which the elevator was to be constructed, was in process of construction, and that there were other men and carpenters engaged in doing other work on the building, some of them making the staircase between the first floor and the basement.

## I.

The gravamen of the plaintiff's case is, that the defendant wilfully, carelessly and negligently failed to furnish the plaintiff with a helper, and likewise furnished him with a ladder that was not so constructed as to prevent it from slipping when one end thereof was placed upon a granitoid floor.

The learned counsel for the parties hereto have collated a great number of decisions of the courts of this and other States, bearing upon the question of the assumption of risks and the duty of the master to his servant. It would serve no good purpose to attempt to reconcile the adjudications upon the subject of assumption of risks. The prior state of adjudication will be found fully discussed in the following Missouri cases: Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Winkler v. St. Louis Basket Co., 137 Mo. 394; Bradley v. Railroad, 138 Mo. 302; Hamman v. Coal Co., 156 Mo. 232; Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467; Grattis v. Railroad, 153 Mo 380; Connolly v. St. Joseph Press Printing Co., 166 Mo. l. c. 463; Minnier v. Railroad, 167 Mo. l. c. 112; Holmes v. Brandenbaugh, 172 Mo. l. c. 66; Haviland v. Railroad, 172 Mo. l. c. 112; Curtis v. McNair, 173 Mo. l. c. 279; Parks v. Railroad, 178 Mo. 108; Mathis v. Kansas City Stock Yards Co., 185 Mo. 434.

The rules deducible from these cases may be briefly stated to be as follows: First, the master is entitled to conduct his business in his own way and with

such appliances as he sees fit, subject to the qualification that the appliance shall be reasonably safe, considering the character of the work to be done, but need not necessarily be the latest or best appliance for doing such work. Second, the servant, in entering the service of the master, assumes the risks that ordinarily and usually are incident to the business being conducted by the master, and the wages paid include compensation for injuries received from such risks. Third, the risks thus assumed by the servant do not include subsequent negligence of the master, but cover only the risks that ordinarily and usually attend the doing of the particular business the master is engaged in, in the manner, place and with the appliances employed and used by the master at the time the servant enters the employment or such as are afterwards employed by the master and which the servant had actual or constructive notice of, and used without protest, and which he believed could be used by the exercise of care and caution. Fourth, if the master fails in his duty, and if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances or quit the service if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances, notwithstanding they are not so reasonably safe, and if he does so and exercises ordinary care and caution and is injured, he does not waive his right to compensation for injuries received in consequence thereof, nor is he guilty of negligence. But, if the appliance furnished is obviously so dangerous that a reasonably prudent man would not attempt to use it, or that it cannot be safely used even with care and caution; or, otherwise stated, if the danger of using the appliance is patent or such as to threaten immediate injury, and the servant uses the same, he is thereby guilty of contributory negligence,

and the master is not liable, notwithstanding his prior failure of duty. Fifth, the master is not an insuer of the safety of the place or of the appliances furnished, and his duty is discharged when he has exercised ordinary care in this regard. Sixth, there is a vast difference between the doctrines of assumption of risk and contributory negligence; the first rests in contract, and the second arises out of the negligence of the servant. The result to the person injured is the same in both cases, but the underlying principles are radically different, and should be carefully borne in mind in every case. The maxim, *"volenti non fit injuria,"* cuts off a recovery where the injury is caused by one of the risks incident to the business which the servant assumes when he enters the employment. The right of recovery is cut off in the second case under the rule of law that prohibits a recovery where the negligence of the person injured contributes thereto.

Cases very similar to the one at bar have arisen and undergone adjudication in other jurisdictions. In Borden v. Daisy Roller Mill Co. (98 Wis. 407), the plaintiff was engaged in putting up some mill-wright work in the defendant's flour mill. When so doing he was obliged to use a ladder. While he was standing on the ladder it slipped and fell and he was injured. He sued the master, alleging the ladder to be defective for want of spikes in the ladder to prevent its slipping on the floor. He recovered in the trial court. That court instructed that the master was liable because the ladder was not equipped with such spikes. The judgment of the circuit court was reversed by the Supreme Court, where it was said: "A ladder is one of the most simple contrivances in general use. The danger attending such a use is a matter of almost common knowledge, and is particularly within the knowledge of men engaged in such work as that in which plaintiff was employed when injured. Under all the circumstances, in view of the very simple character of such a tool, the

ease with which plaintiff could have informed himself as to whether there were points in the bottom of it; the obvious danger which would naturally suggest to such a person the necessity of familiarizing himself with its character in that regard before using it, and to guard against its tendency to slip on the floor; and many other things that may be mentioned, clearly, the court was not warranted in finding, as a matter of law, that the officers and agents of the defendant, whose duty it was to act in this behalf, in the exercise of ordinary care, ought reasonably to have apprehended that some person, who might use the ladder in and about defendant's work, might be injured as a natural and probable result of its condition. This is an essential test of actionable negligence.''

Marsh v. Chickering (101 N. Y. 396), was an action for damages for personal injuries received by the plaintiff in consequence of the slipping of a ladder used by him in lighting the gas lamps in front of defendant's building. Previous to the accident the plaintiff had spoken to the defendant's superintendent and insisted that the ladder ought to be hooked and spiked, and the superintendent promised to have it done, but failed so to do, and the plaintiff told him that unless it was done there would be an accident. On the occasion of the accident, the plaintiff had lighted seven of the lamps. The night was stormy; sleet, rain and snow were falling and a high wind prevailed. In attempting to light the eighth lamp the ladder slipped and plaintiff was injured. The plaintiff recovered in the trial court. The Court of Appeals reversed the judgment, saying:

''The right of the plaintiff to maintain this action is founded upon the alleged negligence of the defendants in not furnishing a proper ladder for the use of the plaintiff in the work he was engaged to perform. It rests upon the principle that it is the duty of the master to the servant, and the implied contract between

them, that the master shall furnish proper, perfect and adequate machinery for the proposed work. . . . . As a general rule it is to be supposed that the master who employs a servant has a better and more comprehensive knowledge of the machinery and materials to be used than the employee, who has claims upon his protection against the use of defective or improper materials or appliances while engaged in the performance of the service required of him.

"The rule stated, however, is not applicable to all cases, and where the servant has equal knowledge with the master as to the machinery used or the means employed in the performance of the work devolving upon him, and a full knowledge of existing defects, it does not necessarily follow that the master is liable for injuries sustained by reason of the use thereof. In considering the application of the rule just stated due regard must be had to the limited knowledge of the employee as to the machinery and structure on which he is employed and to his capacity and intelligence, and to the fact that the servant has a right to rely upon the master to protect him from injury, and in selecting the agent from which it may arise. . . . In cases, however, where persons are employed in the performance of ordinary labor, in which any machinery is used, and no materials furnished, the use of which requires the exercise of great skill and care, it can scarcely be claimed that a defective instrument or tool furnished by the master, of which the employee has full knowledge and comprehension, can be regarded as making it a case of liability within the rule laid down. A common laborer who uses agricultural instruments while at work upon a farm or in a garden, or one who is employed in any service not requiring great skill and judgment and who uses the ordinary tools employed in such work, to which he is accustomed and in regard to which he has perfect knowledge, can hardly be said to have a claim against his employer for negligence, if in

using a utensil, which he knows to be defective, he is accidentally injured. It does not rest with the servant to say that the master has superior knowledge and has thereby imposed upon him. He fully comprehends that the instrument which he employs is not perfect, and if he is thereby injured it is by reason of his own fault and negligence. The fact that he notified .the master of the defect and asked for another instrument, and the master promised to furnish the same, in such a case, does not render the master responsible if an accident occurs. . . . Even if it be considered that a right of action exists in this case in favor of the plaintiff, under any circumstances, we think that the evidence would not justify a recovery, for the reason that the defendants did not fail in furnishing a proper ladder for the use of the plaintiff in lighting the lamps. The rule is that the master does not owe to his servant the duty to furnish the best known or conceivable appliances; he is simply required to furnish such as are reasonably safe and suitable, such as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or unsafe appliances. . . . The defendants had procured a ladder which ordinarily would be regarded as safe for the purpose for which it was used. The plaintiff had used it for a long time without any accident or danger, and on the very night of the accident it had been placed in position and used several times successfully. That it failed at last for any reason does not establish that it was unfit for use. It might, perhaps, have been more perfect if it had had hooks and spikes, but this improvement was not absolutely essential to relieve the defendants from liability. It was enough that it was reasonably safe and suitable within the rule cited, and under such circumstances an action will not lie.''

This case was cited and followed in Cahill v. Hilton (106 N. Y. l. c. 518), where it was said: ''A ladder, like a spade or hoe, is an implement of simple structure,

presenting no complicated question of power, motion or construction, and intelligible in all its parts to the dullest intellect. No reason can be perceived why the plaintiff, brought into daily contact with the tools used by him, as he was, should not be held chargeable, equally with the defendants, with knowledge of their imperfections.''

Wood v. Tileston, etc., Co. (Mass.), 13 Am. Neg. Rep. 321, was an action for damages received by the plaintiff while using a ladder, by reason of the slipping thereof. The ladder was used to reach a platform about eight feet above the floor. The ends of the ladder were so cut that they rested horizontally on the floor and had a tendency to slip. At the foot of the ladder the cleat split and the ladder slipped, causing the plaintiff to fall. There was a verdict for the defendant and the plaintiff appealed, with the result that the judgment was affirmed, the court holding that the risk was incident to the manner of doing the business as the defendant conducted it, and that the plaintiff assumed the risk when he entered the employment.

Many other cases illustrative of the principles here involved might be cited, but after all there is not so much diversity of opinion as to the underlying principles as there is as to the application of the legal principles to the facts in judgment in the particular cases.

It only remains to apply the rules of law to the facts of this case.

The first negligence assigned is, that the defendant failed to furnish the plaintiff with a helper. Of this it is only necessary to say that at the time the plaintiff entered the service of the defendant and undertook to do the work in this case, he was expressly informed that he could not have a helper until noon, and was told to go on with the work until that time, when a helper would be furnished to help do the heavier part of the work. The manner of doing the work was left entirely to the plaintiff, who was an expert in that de-

partment of work. He was not required to do anything that would or could result in injury. He was left free to do the work in any manner he saw fit, with the instrumentality and appliances and assistance which were furnished him at the time he entered the employment. He knew he was to have no helper until the afternoon. There were, concededly, other parts of the work which he could have safely done, and which were necessary to be done, without the assistance of a helper, and without incurring any risk of injury. The plaintiff, therefore, took the risk of doing the work with the appliances and help that were furnished and cannot now be heard to charge negligence or failure of duty on the part of the master.

The second negligence assigned is, that the ladder had no prongs to prevent it from slipping while resting on the granitoid floor of the basement. There is no evidence in this case that the ladder was furnished by the defendant. The plaintiff says he found it in the building lying with or close to the materials which were to be used in the construction of the elevator, but that he did not know who put it there or to whom it belonged. The plaintiff, therefore, has failed, absolutely, to show that the ladder was one of the appliances which the defendant furnished.

But assuming that the ladder was furnished by the defendant, the failure of the defendant to provide prongs or safety hooks to keep the ladder from slipping, is not sufficient to make the defendant liable in this case. The ladder was a very simple appliance, one that is familiar to every grown man. Its liability to slip when not resting firmly or securely is a matter known to all men. Yet ladders are constantly used, and very few of them have prongs or safety hooks thereon.

There is a total absence of any evidence in this case showing that the ladder furnished was not a reasonably safe appliance and could not have been safely used for the purposes to which it was applied or in-

tended to be applied. There is nothing in the case which, in any manner, made it obligatory upon the plaintiff to use the ladder. The elevator was only to extend from the basement to the first floor, a distance of ten feet. The guide post was to rest in the hole the plaintiff had cut in the granitoid flooring and necessarily was to extend above the first floor. The plaintiff could have reached the first floor from the basement by means of the stair case in process of construction. There was, therefore, no necessity for the plaintiff to use the ladder at all. But even if this be not true, no reason appears why the plaintiff could not, or did not, fasten the ladder so as to prevent it from slipping before ascending it. This he could have done by attaching it to the floor of the first story, if it was not possible to arrange it at the bottom to prevent it slipping by reason of the flooring being made of granitoid. There is no evidence in the case tending to show that the master directed or intended that the plaintiff should use the ladder, nor that the master prescribed or limited the manner of its use. There is no claim that the ladder itself was not otherwise perfectly sound and safe.

Reduced to its last analysis, the plaintiff's case rests upon the proposition that a ladder is an unsafe appliance to be used in going from the basement to the first story of the building, unless it has prongs or safety hooks attached thereto to keep it from slipping. No case supporting such a proposition has been cited by counsel and none has fallen under the observation of the court. On the contrary, among the cases hereinbefore cited, there are several where the claim here made was distinctly denied by the court; and in other cases, a ladder without prongs or safety hooks has been held to be a reasonably safe appliance for the master to furnish the servant, for such uses as ladders are generally applied to. The fact that the ladder rested upon the granitoid floor of the basement could not render it any more insecure than if it had rested on a plank floor.

The liability to slip would be equally as great in the one case as in the other.

The judgment of the circuit court was clearly right and it is, therefore, affirmed.

All concur.