Otis HIGHTOWER, Respondent,

v.

Jess EDWARDS and Handley's Tri-County Gas & Fertilizer Company, a Corporation, Appellants.

No. 54249.

Supreme Court of Missouri, En Banc.

Sept. 8, 1969.

Rehearing Denied Oct. 13, 1969.

James E. Reeves, Ward & Reeves, Caruthersville, for respondent.

Manuel Drumm, Sikeston, for appellant, Jess Edwards.

Harold D. Jones, Bock & Jones, New Madrid, for appellant (Defendant) Handley's Tri-County Gas & Fertilizer Company.

MORGAN, Judge.

A jury awarded plaintiff, employee, $10,000 for injuries suffered when he fell into a hopper of the fertilizer spreader he was operating. The spreader had been provided by his employer, defendant Edwards, and was owned by a fertilizer sales company, defendant Handley. Judgment against each defendant was reversed by the Springfield Court of Appeals, and having sustained plaintiff's application for transfer, we are to review the case "as on original appeal." Rule 84.05(h), V.A.M.R.

Since defendants present different assignments of error, for the sake of clarity, we will consider separately the contentions of each. While so doing, we must recognize that plaintiff, as the prevailing party, is entitled to have the evidence, including all favorable inferences therefrom, considered in the light most favorable to him, and to have defendants' evidence disregarded unless it aids plaintiff's case. Krug v. Sterling Drug, Inc., Mo., 416 S.W.2d 143.

Looking first to the appeal as presented by the employer, it is apparent there is little controversy between the litigants as to the facts giving rise to the case. They all center about or relate directly to the mechanism of the spreader or the manner of its use. It had two rubber-tired wheels supporting a metal platform ten feet in width, and with no power unit was designed as a trailer to be pulled behind a tractor. To the front and in the center of the platform a 150-gallon tank was mounted for the application of liquid fertilizer. Immediately behind this tank, slightly over a foot apart, were two identical metal hoppers placed side by side. In relation to the wheels, each was approximately 4½ feet in width at the top. The front and back sides of both sloped inward to form a narrow trough at the bottom. A common rotating shaft extended through the trough of both tanks, and it was studded with "steel fingers" which operated in the manner of an auger or agitator to prevent "caking" of the dry fertilizer. From there the fertilizer was to pass through four flexible tubes to the ground. A metal lever extended upward between the two hoppers for use in closing or opening the outlets. On the rear of the unit, immediately behind the hoppers, a board, 2" by 12", extended the full width of the spreader. It was on a near-level with the bottom of the hoppers. Since the hoppers were about three feet deep, the top of each would strike a man standing on the board at "about waist high." There were no protective screens or shields over the auger,

nor were there any "hand-holds" for a person standing on the board other than the open edges of the metal hoppers. A decal, five inches in diameter, on each hopper warned: "DANGER—Keep Hands Away From AGITATOR."

Plaintiff's duties, as delegated by his employer, were not complicated. He was to "walk this plank" or "stand" on the board at the rear of the hoppers; cut off the flow while turning at the ends of the field; stir the fertilizer in the hoppers with his "hands" if it became "caked"; and to signal for a stop if any of the four distributing tubes became clogged. While performing these exact duties, the accident occurred and there is no conflicting evidence as to the details. Plaintiff said (that while at the roughest end of the field), " * * * I had to walk to the right end to see how it was, and it got so rough * * * I was trying to make my way to the center where I had a better way to stand, when if it pitched me it pitched me against that tank (for liquid fertilizer), and when I got there it throwed me forward and I caught with this hand, and then this hand missed." He fell forward into the hopper where his right hand and forearm became entangled in the agitator necessitating loosening of the shaft to remove him. No claim is made that the verdict is excessive and we need not consider the evidence relating to plaintiff's injuries.

The defendant Edward's testimony is consistent with that of plaintiff, and specifically, as employer, he admitted: that he gave no warning concerning the operation of the spreader; that a person riding on the board would not have any handholds (except the rim of the hopper); that the spreader was being driven over rough ground; and, that he realized there was a likelihood a person riding on the board could become overbalanced and fall into a hopper.

■■ The case presents no novel question of law, but only the proper application of well defined principles of the law of master and servant to the existing factual situation. The parties agree that an employer is not liable to his employee for injuries sustained in the course of his employment unless the employer was negligent, and that such negligence was the direct and proximate cause of the injury. To establish negligence, as such, it must be shown that the employer has breached some duty which he owed the employee. That duty demands the use of all ordinary care: "To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used." Schaum v. Southwestern Bell Telephone Co., 336 Mo. 228, 78 S.W.2d 439, 442. As a corollary— the employer is not an insurer of the employee's safety. Nor must he provide appliances which are absolutely safe. Gardner v. St. Louis & S. F. Ry. Co., 135 Mo. 90, 36 S.W. 214, 216.

■ Defendant Edwards first contends he was not guilty of any negligence as a matter of law, or, in other words, that plaintiff failed to prove a submissible case of negligence. This argument is based primarily on the ground that the danger created by the lack of a protective screen over the revolving agitator was patent and as obvious to plaintiff as to the employer. From this premise, it is asserted that an employee cannot have a cause of action unless "there (be) some amount of superior knowledge on the part of the employer." With this broad conclusion we cannot agree, other than as it might pertain to the lack of necessity for a warning by the employer, if the facts show the employee not only knew of the danger but also appreciated the significance of it. The two cases cited by defendant Edwards on this point, Corby v. Missouri & Kansas Telephone Co., 231 Mo. 417, 132 S.W. 712, and Zeigenmeyer v. Charles Goetz Lime & Cement Company, 113 Mo.App. 330, 88 S.W. 139, do not hold that an employer's ignorance of or lack of an effort to ascertain a potential danger (regardless of the employee's knowledge) meets the demands placed on him by the

law of master and servant. Although it is true, that in *Corby,* under facts unlike those of the instant case, the court did make a similar declaration when the servant's knowledge of the danger exceeded that of the master relating to duties "depending solely upon the *care* and *manner* with which they were performed, and *not* upon any danger connected with or incident to the place in which they were performed * * *" (emphasis added), such is not the situation here. In fact, "care and manner of performance" relate more to the later charge that plaintiff was contributorily negligent and the argument is neither persuasive nor relevant on the issue of defendant Edward's negligence.

■ Argument is also made that "the rough ground over which the fertilizer distributor was being pulled was the intervening act which was the cause of Plaintiff's loss of balance and resulting injuries." On this point, it is sufficient to say that the rough "clods" in the field, obvious to all, could hardly be described as a "new and independent" force which broke the causal connection between the original wrong and resulting injury. Seeley v. Hutchison, Mo., 315 S.W.2d 821, 826. The terrain was a necessary part of this project from its inception.

■ Further argument is made that plaintiff did not meet his burden "to produce evidence that such protective screening is available and useable," or that it was "in use on any similar machinery." Absent further development of the argument, we will accept it as being defendant Edward's position that plaintiff can not prevail for failure to show some deviation from the "ordinary usage of the business." Although not cited, *Schaum,* supra, is authority for generally requiring a showing that the normal standards of care (relating to the particular activity) have been violated, but in that case, it was also held that " * * * no usage can make a practice, which is inherently unreasonably dangerous, reasonably safe * * *" There was evidence that the spreader had not been designed originally for an operator to ride above the agitator for no "standing place" had been provided; that the actual purpose of the board (added by defendant Handley) was to aid the operator in loading the hoppers; that other makes had partially covered hoppers; and that one of defendant's witnesses had attempted to design a protective screen. We need not evaluate this evidence to determine if it did, in fact, establish a standard, as we are convinced the facts presented clearly come within the exception noted, i. e., that custom and usage are not controlling if the task assigned is so inherently dangerous that injury would be reasonably anticipated.

When considering this spreader, in connection with the demand it be reasonably safe, it must be classified in relationship to the manner in which it was to have been operated. To this extent, two duties of the employer—furnishing of reasonably safe appliances and methods of work—must merge. For example, there would have been no danger if plaintiff had walked behind the spreader where he could have observed the ultimate objective of spreading fertilizer. Obviously, the spreader was safe for this purpose. However, the question becomes more difficult when the task assigned is added. It is in this light that the issue must be determined. Was the spreader reasonably safe in the manner used? Briefly, again, plaintiff's duties required he stand above revolving agitators or metal fingers in an admittedly "top heavy" position without handholds while bouncing over a rough field. Was it a precarious scene? We are convinced that plaintiff made a submissible case, and it was within the province of the jury to have found that plaintiff was not provided a reasonably safe appliance to carry out his assigned task. Of the many cases involving farm machinery, two rather similar are: Spears v. Schantz, 241 Mo.App. 879, 246 S.W.2d 399 and Keeney v. Callow, Mo., 349 S.W.2d 75.

■ Was plaintiff guilty of contributory negligence as a matter of law? Upon the basis that plaintiff readily admitted he

knew the danger of coming in contact with the auger, defendant Edwards contends he was. It is argued that "* * * the obligation and duty of Plaintiff was to do almost everything humanly possible to maintain his balance and not fall into the hoppers." In an apparent effort to avoid the absence of evidence that plaintiff did not make such an effort, his negligence is alleged to have arisen from his attempt to move to the center of the spreader while it was bouncing on rough ground. To the contrary, as shown by plaintiff's testimony, this lateral movement on the board was made to seek a place of safety from the hazardous situation his very duties had created. From the evidence, plaintiff's negligence occurred, if at all, the moment he took his assigned place on the board, for it is clear he did not *voluntarily* place his arm into the auger or unnecessarily come in contact with it. "A voluntary exposure to known danger is an essential element of contributory negligence," Bartlett v. Taylor, 351 Mo. 1060, 174 S.W. 2d 844, 851; Bridges v. Arkansas-Missouri Power Company, Mo.App., 410 S.W.2d 106, 111. Plaintiff's experience and knowledge are only relevant in connection with his initial act of taking his position on the board, as this was his only affirmative or voluntary act. *Keeney,* supra, 349 S.W.2d l.c. 80. He was 54 years of age with a fourth grade education, engaged during his lifetime as a farm laborer, and had recently migrated from the State of Mississippi. His experience covered farm work from chopping cotton to operating farm machinery. Assuming his experience gave him a familiarity with the mechanism of farm machinery, and particularly this spreader which he had tended for two or three days before, there remains the somewhat elusive question as to whether or not plaintiff "appreciated" the danger of working from the board above the auger. Bullock v. Benjamin Moore and Company, Mo.App., 392 S.W.2d 10, 14; Bridges v. Arkansas-Missouri Power Company, Mo.App., 410 S.W. 2d 106, 111; Burk v. Missouri Power & Light Company, Mo., 420 S.W.2d 274, 278. On this issue we must start from the established principle that, "Where an employee is specifically directed by his employer to do an act, he can rely on the master's judgment that it is safe, unless the danger is imminent, Wilson v. United Rys. Co. of St. Louis, Mo.Sup., 181 S.W. 19, or so obvious or glaring that no reasonably prudent person in the exercise of ordinary care would undertake to do the work in such a manner." Fletcher v. Kemp, Mo., 327 S.W.2d 178, 184. The obvious danger was coming in contact with the auger not the act of standing on the board, and we cannot declare with certainty, that as a matter of law, plaintiff did appreciate the hazard and was contributorily negligent in accepting his assignment to work from the board. Reasonable men might differ, and the issue was properly for the jury. From this standpoint the decal warning is not significant as it only pointed up a fact obvious to all. See Bean v. Ross Manufacturing Company, Mo., 344 S.W.2d 18, 27.

 As to the argument plaintiff assumed the risk, we quote, again, from *Schaum,* supra: "Under our Missouri rule, assumption of risk is not a defense at all where the risk arises from the employer's negligence. An employee's conduct with reference to such risks is considered as contributory negligence." See also Markley v. Kansas City Southern Ry. Co., Mo., 90 S.W.2d 409, 411, and Turpin v. Shoemaker, Mo., 427 S.W.2d 485, 489.

Having ruled that the evidence created a jury question as to defendant Edward's negligence in providing the spreader for use as directed, the attack on Verdict Directing Instruction No. 3 has been disposed of, as is the further argument the trial court erred in not giving Instruction No. 10 that plaintiff assumed all risks of the employment.

We look now to the appeal of defendant Handley. In his brief plaintiff submits that, "The rules governing Handley's liability under these circumstances are set forth in Restatement of the Law, Second, Torts, Sections 388, 391 to 393. These sec-

**278**

tions, in substance, impose liability on one who supplies to another, directly or through a third person, a chattel which is dangerous for use." This last conclusion is basically correct, but fails to add, as do each of the cited sections in comparable language, that such a supplier's liability arises when he "fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Section 388(c). The cited sections do not place an absolute liability on a supplier of a chattel, but only a duty, among others, to warn a user of the danger.

■ The record establishes that Handley, as a competitive practice, provided a spreader for its customers. It is not clear as to whether or not defendant Edwards had been a customer of Handley prior to the accident, but it is agreed that Edwards had borrowed the spreader from a neighbor, and had not obtained it from Handley. Whether or not Handley would have allowed Edwards to use the spreader, if such a request had been made, is unimportant, the fact is that Handley did not know it was being used by Edwards. Not having an opportunity to warn, Handley should not be penalized for not doing so. Instruction No. 3, plaintiff's verdict directing instruction against Handley, in paragraph "Fifth," submitted "failure to warn" which was not proper under the evidence.

Each of the defendants had filed a cross-claim against the other. By agreement, the issues therein raised were withdrawn from the jury and submitted to the court. Relief was denied on both claims which was consistent with this opinion and a detailed consideration of the cross-claims is not required.

The judgment in favor of plaintiff is affirmed against defendant Edwards and reversed as to defendant Handley. The judgment in favor of Edwards on Handley's cross-claim against Edwards, and in favor of Handley on Edward's cross-claim against Handley, is affirmed.