**Gregory S. SMOOT, Respondent,**

v.

**Jimmy D. VANDERFORD and Darlene Vanderford, Appellants.**

**No. 19604.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 22, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied March 16, 1995.

Application to Transfer Denied
April 25, 1995.

234

M. Sean McGinnis, Kenneth H. Reid, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for appellants.

Bert V. Twibell, John H. Kizer, Twibell, Greene, Johnson & Kizer, Springfield, for respondent.

CROW, Judge.

Gregory S. Smoot ("Gregory")[1] was injured when he fell while using an extension ladder and a chain saw to cut a limb from a tree at the home of his employers, Jimmy D. Vanderford ("Jimmy") and Darlene Vanderford ("Darlene").

Gregory sued the Vanderfords. A jury assessed these percentages of fault:

Jimmy, 30 percent

Darlene, 30 percent

Gregory, 40 percent

The jury, disregarding Gregory's fault, assessed his damages at $150,000. The trial court reduced that amount by Gregory's percentage of fault and entered judgment for Gregory against the Vanderfords for $90,000 plus prejudgment interest per § 408.040.2, RSMo Supp.1987.

■ The Vanderfords appeal, maintaining the trial court erred in denying their motion for a directed verdict[2] and in giving certain

---

1. For brevity and clarity, we refer to the parties by their respective forenames. We mean no disrespect.

2. The Vanderfords moved for a directed verdict at the close of Gregory's evidence. The trial court denied the motion, whereupon the Vanderfords presented evidence, thereby waiving any error in the denial. *Polovich v. Sayers*, 412

instructions. In reviewing the trial court's denial of the motion for a directed verdict, we view the evidence favorably to Gregory, giving him the benefit of all reasonable inferences. *Black v. Kansas City Southern Railway Co.*, 436 S.W.2d 19, 23[1] (Mo. banc 1968).

Gregory was "almost twenty-seven years old" on the date of the injury, September 4, 1991. He had worked for the Vanderfords "on and off for probably ten previous years," mowing lawns, painting their "rental property," and cleaning up vacated properties in preparation for re-renting.

Jimmy's occupation as a management consultant required him to travel during the week. Consequently, if Jimmy had tasks for Gregory, Jimmy told Gregory on weekends.

On the weekend preceding September 4, 1991, Jimmy informed Gregory by phone that one of the tasks for the upcoming week would be cutting limbs off two trees at the Vanderfords' home. Gregory went there, and Jimmy showed Gregory "specifically which limbs to cut."

Jimmy knew Gregory owned a "thirty-two foot extension ladder." Because the limbs on one tree were "somewhere in the neighborhood of twenty feet" above the ground and Jimmy's "tallest ladder" was a stepladder, Jimmy told Gregory to use the extension ladder.

The size of the limbs convinced Gregory that using a handsaw would be impractical, so he decided to use a chain saw he borrowed from his father. Jimmy conceded it was "probably true" that he knew a chain saw would be required.

Gregory arrived at the Vanderfords' home around "6:00 or 6:30" p.m., Wednesday, September 4, 1991, unloaded his ladder from his truck, and put gasoline and oil in the chain saw. As he did so, Darlene came outside and engaged in conversation with a next door neighbor, Mike Williams.

Using his ladder, Gregory climbed to the roof of the Vanderfords' garage and, standing on the roof, used the chain saw to cut three branches from a nearby tree that overhung the garage. Another limb was growing toward Williams' garage. Darlene asked Williams if he wanted it removed. He said yes, so Darlene asked Gregory to remove it.

This time, Gregory placed his ladder on the target limb, ascended the ladder, and cut off the offending part of the limb with the chain saw. Asked whether Darlene was still there, Gregory answered, "I think she left before I started cutting his limb."

Gregory recounted that he then carried his ladder to a tree in the Vanderfords' back yard, pushed the extension section "up as high I could push it," and placed the ladder against one of the limbs he was to trim. He positioned the ladder so the tree trunk was to his left and the part of the limb he intended to remove was to his right.

Gregory conceded the ladder was "not fully extended" and could have been lengthened by moving the extension section farther up the base section. Nonetheless, avowed Gregory, the top of the ladder was at least a foot above the limb on which the ladder was propped.

Gregory ascended the ladder until he was "eye level" with its top. Using the chain saw, he cut off the portion of the limb to the right of the ladder with "no difficulty."

Gregory then moved the ladder to the second limb which, like the first, was some twenty feet above the ground. He again propped the ladder against the limb, with the tree trunk on his left and the portion of the limb to be removed on his right. He ascended the ladder and began cutting the limb about a foot to the right of the right edge of the ladder. This time, the limb broke but remained "hanging." He then cut the limb "the rest of the way." As the severed part fell, Gregory began "falling forward with the ladder."

S.W.2d 436, 438[2] (Mo.1967); *Browning v. Salem Memorial District Hospital*, 808 S.W.2d 943, 948[6] (Mo.App.S.D.1991). The Vanderfords again moved for a directed verdict at the close of all the evidence. The trial court denied the motion. The Vanderfords assigned that ruling as error in their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. We assume the denial of their motion for a directed verdict at the close of all the evidence is the ruling they attack in this appeal.

Asked at trial why he fell, Gregory surmised that the segment of the limb on which he propped the ladder sprang upward over the top of the ladder upon being freed of the weight of the severed "heavy end portion."

Gregory's assumption was confirmed by Williams, who gave this account:

"[W]hen he cut that branch, the branch, when it released that particular part of the limb there, went flying up and went over the top of the ladder, and the ladder basically spun around from the right-hand side, and he ... more or less jumped off, but he was thrown off the ladder ... and then came down screaming and ... the ladder was coming down and the chain saw was flying...."

No one else was present when Gregory fell, and no other explanation appears in the record.

As Gregory was falling, the chain saw was still running. Fearful of landing on it, he threw it aside. He landed "feet first" to the right of the ladder and felt instantaneous pain go up his legs. He continued forward and rolled over.

Both heel bones were broken into "several pieces." The Vanderfords do not question the jury's assessment of damages, hence we need not detail the physical and financial consequences of the injuries.

Gregory tendered a verdict-directing instruction against Jimmy, and the trial court gave it (over Jimmy's objection) as Instruction 7. It read:

"In your verdict you must assess a percentage of fault to defendant Jimmy D. Vanderford, whether or not plaintiff was partly at fault if you believe:

First, that defendant knew or should have known that plaintiff was inexperienced in the job of trimming tree limbs with a chain saw from an extension ladder, and

Second, that by directing plaintiff to perform that job in the manner submitted in paragraph First, defendant created an unreasonable risk of harm to plaintiff, and

Third, defendant failed to use ordinary care to warn plaintiff of such condition, and

Fourth, such failure directly caused or directly contributed to cause damage to plaintiff."

Gregory tendered a verdict-directing instruction against Darlene identical to Instruction 7 except that Darlene's name was substituted for Jimmy's. Over Darlene's objection, the trial court gave the verdict-directing instruction against her as Instruction 8.

The first of the Vanderfords' three points relied on asserts the trial court's denial of their motion for a directed verdict was error in that the evidence did not make a submissible case of failure to warn a business invitee[3] of a dangerous condition on the Vanderfords' premises. The Vanderfords maintain the "condition" was open and obvious as a matter of law, thus their conduct did not fail to meet the required standard.

Consideration of the point must begin by identifying the "condition" referred to in paragraph "Third" of Instructions 7 and 8. The only "condition" described in those instructions was Gregory's inexperience in "trimming tree limbs with a chain saw from an extension ladder."

We infer Gregory's theory of liability was that the Vanderfords, knowing he was inexperienced in that method of trimming trees, subjected him to an unreasonable risk of harm by directing him to use that method to trim the trees on their premises and, having exposed him to such risk, were negligent in failing to warn him about it.

Gregory's brief appears to confirm our inference. It states:

"There was evidence presented from which the jury could reasonably find the [Vanderfords] negligently failed to warn [Gregory] of the dangers of trimming tree limbs with a chain saw from an extension ladder. Under Missouri law there was a duty on the part of the [Vanderfords] to warn [Gregory] of the dangers inherent in the activity

3. Citing *Kaiser v. Pellegrino*, 601 S.W.2d 306 (Mo.App.E.D.1980), Gregory asserts his employment by the Vanderfords constituted him a business invitee—a proposition the Vanderfords do not dispute.

they directed him to undertake on their premises. That duty is applicable in this case because [he] had never before trimmed tree limbs from an extension ladder with a chain saw. The trial court correctly refused to grant the [Vanderfords'] Motion for a Directed Verdict at the Close of All the Evidence."

In their answer to Gregory's petition, the Vanderfords admitted Gregory was inexperienced in being on an extension ladder and using a chain saw to trim trees, was unfamiliar with the "proper, usual and safe methods of doing said work," and was unaware of the dangers attendant to such an undertaking. At trial, the Vanderfords argued this was not an admission that they *knew* of Gregory's inexperience when the task was assigned. However, when asked whether he recalled any occasions on which Gregory had trimmed tree limbs prior to the accident, Jimmy testified, "There might have been some pruning from ground level, but ... just clippers, pruners, that kind of thing." Jimmy and Darlene conceded that using a chain saw and an extension ladder to trim trees is dangerous.

Viewed favorably to Gregory, there was sufficient evidence to support the hypothesis in paragraph "First" of Instructions 7 and 8 that the Vanderfords knew or should have known that Gregory was inexperienced in "trimming tree limbs with a chain saw from an extension ladder." There was likewise sufficient evidence to support the hypothesis in paragraph "Second" of Instructions 7 and 8 that by directing Gregory to perform the job in that manner, the Vanderfords created an unreasonable risk of harm to him. However, none of that is important because neither the chain saw nor the extension ladder was the "condition" that caused Gregory's injuries.

The injuries were caused by the impact of a twenty-foot fall which, in turn, was caused by the instantaneous ascent of the limb on which Gregory had propped the ladder. There was no evidence that Gregory fell because the extension section of the ladder

became disengaged from the base section or that he would not have fallen had he used a conventional ladder.

It is equally obvious that the chain saw was not an instrumentality of Gregory's injuries. He had the presence of mind to cast it aside as he fell.

Thus, assuming arguendo that trimming tree limbs twenty feet above the ground with a chain saw while standing on an extension ladder is a dangerous activity, it is evident that neither the saw nor the ladder was the "condition" that inflicted the injuries. Instead, the injury-causing "condition" was the withdrawal of support for the ladder when the limb on which Gregory propped it sprang upward upon being freed of the weight of the severed portion.

Laying aside, for now, the Vanderfords' attacks on Instructions 7 and 8, and addressing only the sufficiency-of-the-evidence issue, it is clear that the Vanderfords' liability hinges on whether they had a duty to warn Gregory that if he propped the ladder on the limb he intended to trim, there was a danger that the part on which the ladder was propped would spring upward when freed of the weight of the severed portion.

The copies of Instructions 7 and 8 in the record reveal Gregory constructed them from MAI 22.03 [1989 Revision], MAI 22.08 [1978 New], MAI 19.01 [1986 Revision], and MAI 37.01 [1986 New]. Two of those MAI's, 22.03 and 22.08, are verdict-directors hypothesizing negligence of an owner or occupier of premises for injury caused by a dangerous condition on the premises.[4] The third, 19.01, is a generic instruction for use in a case involving two or more causes of damage. The fourth, 37.01, is a generic instruction directing assessment of fault in a comparative fault case.

The copies of Instructions 7 and 8 list three cases as supporting authority. One is *Cox v. J.C. Penney Company, Inc.,* 741 S.W.2d 28 (Mo. banc 1987).

---

4. *Karnes v. Ray,* 809 S.W.2d 738, 741 (Mo.App. S.D.1991), points out that except for MAI 24.01, designed for Federal Employers' Liability Act cases, there is no MAI for negligence actions by an employee against an employer.

In *Cox,* a business invitee sued a retailer, alleging she was injured when she tripped over a luggage strap which extended across an aisle in the store. The issue on appeal was whether the invitee could recover even if she failed to exercise ordinary care in discovering an obvious danger. At common law, such negligence would have barred recovery. *Id.* at 29–30.

*Cox* explained that the adoption of comparative fault in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), abolished contributory negligence as a bar to recovery in negligence suits and assigned juries the responsibility of assessing the relative fault of the parties. *Cox,* 741 S.W.2d at 30. However, *Cox* reaffirmed that an occupier of premises has no duty to warn an invitee about an open and obvious danger unless the occupier should anticipate harm despite the invitee's constructive knowledge of the danger. *Id.* at 29[2].

The factual difference between *Cox* and the instant case is obvious. In *Cox,* the invitee was injured by a preexistent condition (the strap in the aisle). Here, the "condition" that caused Gregory's injuries did not exist when he commenced work on the Vanderfords' premises. This is not a case where the limb on which he propped the ladder collapsed because the limb was rotten. Had that occurred, and had the Vanderfords known, or by using ordinary care should have known, the limb was rotten, they would have had a duty to warn unless such condition was open and obvious. Here, however, the "condition" that caused Gregory's injuries was self-created by him, thus *Cox* is helpful only insofar as it sets forth the general principles of comparative fault.

The other two cases listed on Instructions 7 and 8 as supporting authority are, like *Cox,* cases where a preexistent condition caused bodily injury: *Hefele v. National Super Markets, Inc.,* 748 S.W.2d 800 (Mo.App.E.D. 1988), ice-covered sidewalk, and *Hunt v. Jefferson Arms Apartment Co.,* 679 S.W.2d 875 (Mo.App.E.D.1984), unbarricaded, dimly lit elevator shaft.

Evidently recognizing now that such cases are inapposite, Gregory directs us to cases addressing the duty of an employer to warn an inexperienced employee about dangers inherent in the assigned work. Citing *Nagy v. St. Louis Car Co.,* 37 S.W.2d 513 (Mo.1931), Gregory declares, "Missouri law is clear that there is a duty of the employer to warn the employee, who, by lack of experience, does not know the dangers involved in the activity he has been directed by the employer to undertake."

In *Nagy,* a machine shop employee's arm was caught and injured in a drill press. Working with the device was not his regular job. His theory of liability was that because his employer knew he was inexperienced in the operation of a drill press and ignorant of the danger incident thereto, the employer was negligent in directing him to work at the drill press without warning him of the danger and telling him how to avoid injury. *Id.* at 514. The Supreme Court of Missouri said:

> "The well-known general duty of a master to exercise reasonable care to furnish his servant a reasonably safe place in which to work ... embraces the particular duty where an inexperienced servant is employed upon dangerous work, to give the servant such instructions in the proper method of doing the work and such warning of natural dangers and of dangers which will attend a departure from the proper method as is reasonably required by the servant's inexperience and lack of proper knowledge, and which will enable the servant, with the exercise of reasonable care, to perform the duties of his employment with reasonable safety to himself."

*Id.* at 517.

While that is a clear and succinct declaration of law, the facts of *Nagy* bear scant resemblance to those here. In *Nagy,* the employee was hurt by a machine at which he was working. Here, Gregory was not hurt by any device he was using. The ladder did not fail, and Gregory did not fall because the chain saw disrupted his balance.

Furthermore, the business of the employer in *Nagy* was running a machine shop, thus the employee's superiors presumably knew more about the danger of a drill press than he did. Here, the Vanderfords were not in

the tree-trimming business and there is no evidence that they knew any more than Gregory about such work or that they had any reason to foresee the injury-causing occurrence.

In saying that, we do not ignore the evidence that on an earlier occasion the Vanderfords had engaged a "tree service out of the phone book" for some extensive trimming and tree removal at their home, and on another occasion had engaged a trained tree trimmer for trimming and tree removal at a rental house. Nothing in the record indicates the Vanderfords acquired any expertise in tree trimming from those with whom they contracted. Indeed, paying others to do such work suggests the Vanderfords lacked either the ability or equipment (or both) to do it themselves.

During oral argument before us, Gregory said *Nagy* was one of the two main cases on which he relies in regard to the sufficiency-of-the-evidence issue. The other is *Hightower v. Edwards*, 445 S.W.2d 273 (Mo. banc 1969). There, an employee was operating a fertilizer spreader towed by a tractor across a farm field. He fell into a hopper where his right hand and forearm were injured by an auger. He sued his employer and won in the trial court. On appeal, the employer maintained he was innocent of negligence as a matter of law in that the danger inherent in the lack of a protective shield was patent and as obvious to the employee as to the employer. Therefore, insisted the employer, the employee had no cause of action unless there was superior knowledge on the part of the employer.

The Supreme Court of Missouri said, "With this broad conclusion we cannot agree, other than as it might pertain to the lack of necessity for a warning by the employer, if the facts show the employee not only knew of the danger but also appreciated the significance of it." 445 S.W.2d at 275. The Supreme Court added that the authorities relied on by the employer "do not hold that an employer's ignorance of or lack of an effort to ascertain a potential danger (regardless of the employee's knowledge) meets the demands placed on him by the law of master and servant." *Id.* at 275–76. The Supreme Court affirmed the judgment against the employer.

*Hightower*, like *Nagy*, was a case where the employee was injured by the machine with which he was working. As underscored earlier, that did not occur in the instant case. Gregory was injured because the part of the limb on which he propped the ladder sprang upward when freed of the weight of the severed part. Evidently, that would have occurred had the ladder been a conventional one instead of an extension ladder, and had the cutting tool been a handsaw.

Having determined that the cases heretofore discussed are not controlling, we turn to those that are—those where a worker on a ladder was injured in a fall not attributable to a defect in the ladder.

In *Green v. Sutton*, 452 S.W.2d 200 (Mo. 1970), a 46–year–old man advertised he was seeking employment as a household worker. Responding to the ad, a woman hired the man to remove screens and install storm windows at her and her husband's home. To install a second floor storm window, the man placed an extension ladder with rubber-covered feet (furnished by the homeowners) on a cement driveway, resting the top on the windowsill where the storm window was to go. When he ascended, he discovered the top of the ladder extended to a length that prevented him from putting the storm window in place.

The wife instructed the man to lower the ladder so it would not interfere. He did. Upon ascending anew, he was able to attach the storm window at the top, but not the bottom. While attempting to force it in, he fell. He sued; his theory of liability was that the homeowners furnished him a ladder that could not be safely used for the work and they knew, or by using ordinary care could have known, that it could not be safely used.

A jury found for the homeowners. The man appealed. The Supreme Court of Missouri held there was no evidence that the ladder was defective or unsuitable for the assigned task. *Id.* at 206. The Supreme Court concluded from the evidence that the ladder slipped and tipped over, *id.*, consequently the man did not make a submissible

case and the trial court should have directed a verdict for the homeowners. *Id.* at 209–10[10].

We recognize *Green* differs from the instant case in two respects. First, the theory of liability in *Green* was not failure to warn. Second, the worker in *Green* had been "up and down ladders all his life."[5] *Id.* at 207. However, *Green* quotes with approval a passage from *Johnson v. Keen,* 168 S.W.2d 952 (Mo.App.1943), which is pertinent here:

> "An employer is not bound to warn and instruct an employee as to dangers that are obvious and patent. An employer has a right to assume in such a case that his servant will take reasonable precautions for his own safety and give reasonable attention to those matters that are open and obvious to the senses of a man of ordinary intelligence or which are as easily discernible by the employee as by the employer."

*Green,* 452 S.W.2d at 206.

*Johnson,* like *Green,* was a case where a worker on a ladder was injured in a fall. In *Johnson,* the worker was employed at a bookstore where one of his duties was dusting the books and shelves. As he was dusting a high shelf while standing on the next-to-top rung of a twelve-foot ladder, he attempted to steady himself. Without looking, he reached forward to grasp the end of the shelf. In doing so, he grasped a loose board, which was leaning against the end of the shelf, with the result that he fell.

The board was one of several used by the owners to separate books into different classifications. The worker admitted he had seen such boards on the lower shelves, but never on the upper shelves. They were different in color from the shelves, and not of the same height as the space between the shelves.

The trial court granted the owners' motion for a directed verdict. On appeal, the worker maintained he made a submissible case on the theory that there was a breach of duty by the owners in that they *failed to warn* him

that the board was loose and apt to cause him to fall if he grasped it.

The appellate court disagreed, holding that the danger, if any, of the loose board was either obvious or discoverable by one exercising that reasonable degree of care which persons of ordinary intelligence are expected to take for their own safety. *Id.* at 952.

In *Blundell v. William A. Miller Elevator Mfg. Co.,* 189 Mo. 552, 88 S.W. 103 (1905), a worker placed the rounded base of a ladder on a smooth surface (granitoid floor) and ascended. The ladder slipped; he fell and was injured. 88 S.W. at 104. He sued his employer on the theory that the employer negligently furnished a ladder that was not so constructed as to prevent it from slipping when placed on a smooth floor. *Id.* at 105. At the close of the worker's evidence, the trial court sustained a demurrer. *Id.* at 104.

The Supreme Court of Missouri affirmed. Although the theory of liability in *Blundell* was not failure to warn, the opinion contains maxims applicable here:

> "A ladder is one of the most simple contrivances in general use. The danger attending such a use is a matter of almost common knowledge.... The ladder ... is familiar to every grown man. *Its liability to slip when not resting firmly or securely is a matter known to all men.*"

*Id.,* 88 at 105–06, 107 (emphasis added).

Both sides cite *Harris v. Niehaus,* 857 S.W.2d 222 (Mo. banc 1993). Although not a ladder case, it sets forth general principles applicable here:

> "In a negligence action, liability only exists when a defendant's conduct 'falls below the standard [of care] established by law for the protection of others against unreasonable risk of harm,' Restatement (Second) of Torts, § 282, and such conduct is the proximate cause of the plaintiffs' injuries. The particular standard of care that society recognizes as applicable under a given set of facts is a question of law for

---

**5.** This second difference is only one of degree. Although Gregory had never used an extension ladder to trim trees, he had used his extension ladder earlier in 1991 to paint his two-story

home. Indeed, that was the reason he bought the ladder. It is therefore reasonable to infer he understood that to be safe, a ladder should be propped against an immovable object.

the courts.... The Court will not ... submit a case to the jury where no evidence exists to support a finding that defendant's conduct fell below the identified standard of care.

. . . . .

[W]here the danger is open and obvious as a matter of law and *the risk of harm exists only if the plaintiff fails to exercise due care,* the case is not submissible to the jury...."

857 S.W.2d at 225, 227 (emphasis added).

 Applying the teachings of *Harris,* we hold the danger which resulted in Gregory's injuries was open and obvious as a matter of law, and the risk of harm existed only because he failed to exercise due care. That is, when Gregory (a) propped the ladder on the limb he intended to trim, and (b) positioned the ladder so far from the trunk as to create a danger that the portion of the limb supporting the ladder would spring upward above the top of the ladder upon being freed of the weight of the severed part, Gregory failed to exercise due care and subjected himself to a danger which he alone created and which was open and obvious as a matter of law.

The Vanderfords had the right to assume Gregory would take reasonable precautions for his own safety and avoid a danger which was open and obvious as a matter of law; consequently, the Vanderfords had no duty to warn Gregory about the danger which caused his injuries—a danger that did not exist until he created it and which the Vanderfords had no opportunity to discover before he was hurt. *Green,* 452 S.W.2d at 206; *Johnson,* 168 S.W.2d at 952. That being so, there was no submissible case of negligence against the Vanderfords; that is, there was no fault on their part for a fact-finder to "compare" to Gregory's fault. It follows that the trial court erred in denying the Vanderfords' motion for a directed verdict. The judgment must be reversed.

 Where a plaintiff prevails in the trial court and an appellate court reverses because of insufficient evidence, the preference is for remand for a new trial. *Moss v. National Super Markets, Inc.,* 781 S.W.2d

784, 786[3] (Mo. banc 1989). Reversal without remand is appropriate only if the appellate court is persuaded the plaintiff cannot make a submissible case on retrial. *Id.* Addressing that issue, we conclude from the record that Gregory has presented all available evidence on the issue of liability and cannot muster additional evidence sufficient to make a submissible case. Therefore, remand for a new trial is unwarranted. *Lance v. Van Winkle,* 358 Mo. 143, 213 S.W.2d 401, 404–05[11] (1948).

Having found the Vanderfords' first point meritorious, requiring reversal, and having held remand is unwarranted, we need not address the Vanderfords' other assignments of error.

Judgment reversed.

GARRISON, P.J., and PARRISH, J., concur.